*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
ELECTRONIC CITATION: 2004 FED App. 0106P (6th Cir.)
File Name: 04a0106p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

GUANG RUN YU,
   *Petitioner,*

  *v.*

JOHN ASHCROFT, Attorney
General of the United States,
   *Respondent.*

No. 03-3137

On Appeal from the Board of Immigration Appeals.
No. A79 690 916.

Argued:  December 2, 2003

Decided and Filed:  April 15, 2004

Before:  SILER, DAUGHTREY, and GIBBONS, Circuit
Judges.

———————

## COUNSEL

**ARGUED:**  Scott E. Bratton, MARGARET WONG &
ASSOCIATES, Cleveland, Ohio, for Petitioner.  James A.
Hunolt, UNITED STATES DEPARTMENT OF JUSTICE,
OFFICE OF IMMIGRATION LITIGATION, Washington,

---

D.C., for Respondent.  **ON BRIEF:**  Scott E. Bratton,
MARGARET WONG & ASSOCIATES, Cleveland, Ohio,
for Petitioner.  James A. Hunolt, Emily A. Radford, UNITED
STATES DEPARTMENT OF JUSTICE, OFFICE OF
IMMIGRATION LITIGATION, Washington, D.C., for
Respondent.

———————

## OPINION

———————

SILER, Circuit Judge.  Petitioner Guang Run Yu appeals
his denial of asylum, arguing that the Immigration Judge (IJ)
and Board of Immigration Appeals (BIA) erred in assessing
his credibility.  We AFFIRM the BIA.

### FACTUAL BACKGROUND

Yu is a native citizen of China, seeking asylum based on his
alleged connection with "Falun Gong" - a movement that
blends aspects of Taoism and Buddhism with martial arts
meditation.  The Chinese Government declared Falun Gong
illegal in 1999; the U.S. State Department has since
documented reports of imprisonment, "re-education" in labor
camps, torture, and death of Falun Gong participants.

According to Yu, the wife of his friend Wang was arrested
as a Falun Gong leader in 2000.  Yu testified that, after the
arrest, Yang hid at Yu's house and gave Yu four boxes of
Falun Gong material to stash.  Yu claimed that he hid the
boxes in an unused kitchen cupboard, unbeknown to his wife.
Public security arrested Wang at Yu's house in June or July
2001, but failed to search the house.  Yu testified that he
burned the "most important" box in August 2001, but did not
dispose of the other three.  Yu also testified that both Wang
and Wang's wife are presently in re-education camps.

Later in August 2001, Yu, ostensibly seeking to avoid the police, traveled to Singapore, Malaysia, and Thailand without any difficulty, and returned 10-15 days later to hide at his sister-in-law's house. Yu claimed that during this time his wife and child remained at home, with the three boxes. According to Yu, public security again searched his house sometime in late 2001, this time seizing the remaining three boxes and telling Yu's wife that he was to report to the public security office. In December 2001, Yu entered the United States and was stopped by the INS at the Detroit Airport.

Yu testified that public security has since visited his home often and that his wife served time in a re-education camp.

## PROCEDURAL BACKGROUND

Yu conceded removability but applied for asylum, withholding of removal, and withholding under the Torture Convention. The IJ denied Yu's application based solely on lack of credibility. The BIA affirmed without opinion, and Yu petitioned this court for review. We have jurisdiction pursuant to 8 U.S.C. § 1252(a)(1), which provides for judicial review of all final immigration removal orders. Because the BIA affirmed the IJ without opinion, we review the IJ decision as the final administrative order. *See, e.g., Albathani v. INS*, 318 F.3d 365, 373 (1st Cir. 2003).

## STANDARD OF REVIEW

The IJ, acting for the Attorney General,[1] has discretion to grant asylum to any alien who qualifies as a "refugee." 8 U.S.C. § 1158(a) & (b). The statute defines a refugee as an alien who is unable or unwilling to return to his home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a

---

[1]The statute refers to the Attorney General. Since the Attorney General has delegated his immigration authority to the BIA and IJ, we will refer to the IJ rather than the Attorney General.

particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). Even if the alien qualifies as a refugee, the IJ may, in his discretion, deny asylum. 8 U.S.C. § 1158(a) & (b). Thus, fielding a request for asylum "involves a two-step inquiry: (1) whether the applicant qualifies as a 'refugee' as defined in § 1101(a)(42)(A), and (2) whether the applicant merits a favorable exercise of discretion by the [IJ]." *Ouda v. INS*, 324 F.3d 445, 451 (6th Cir. 2003) (internal quotation marks and citation omitted).

At the first step, we review the IJ's factual determination as to whether the alien qualifies as a refugee under a substantial evidence test. The Supreme Court found that the IJ's determination on eligibility for asylum had to be upheld if "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992). The Court was directly quoting 8 U.S.C. § 1105a(a)(4), which provided that the IJ's findings of fact had to be supported by this type of evidence. The Court went on to find reversal available only if "the evidence presented by [the alien] was such that a reasonable factfinder would have to conclude that the requisite fear of persecution existed," citing *NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292 (1939), a case documenting "substantial evidence" decisions for administrative orders. *Elias-Zacarias*, 502 U.S. at 481.

However, in 1996, 8 U.S.C. § 1105a(a)(4) was repealed and replaced by 8 U.S.C. § 1252(b)(4). Nevertheless, many circuits, including the Sixth, *see Ouda*, 324 F.3d at 451, continue to cite the "supported by reasonable, substantial, and probative evidence" language as controlling. Given that this language was repealed, we take this opportunity to clarify the standard of review.

Now, findings of fact are "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). Courts have found that § 1252(b)(4)(B) basically codifies the Supreme Court's

substantial evidence standard. *See Dia v. Ashcroft*, 353 F.3d 228, 247-49 (3d Cir. 2003). Thus, our jurisprudence, except for reiteration of the of the repealed "supported by reasonable, substantial, and probative evidence" language, remains good law. *See Ouda*, 324 F.3d at 451 (finding IJ's determination should be upheld unless evidence "not only supports a contrary conclusion, but indeed *compels* it," and "[a]s such, the petitioner must show that the evidence presented was so compelling that no reasonable factfinder could fail to find the requisite persecution or fear of persecution") (citation omitted); *accord Mikhailevitch v. INS*, 146 F.3d 384, 388 (6th Cir. 1998).

Regarding the second step, the discretionary judgment to grant asylum to a refugee is "conclusive unless manifestly contrary to the law and an abuse of discretion." 8 U.S.C. § 1252(b)(4)(D).

## DISCUSSION

### Yu's Credibility

For asylum, Yu must demonstrate that he qualifies as a refugee by producing evidence that he has suffered past persecution or has a well-founded fear of future persecution. 8 U.S.C. § 1101(a)(42)(A). The IJ stated he would have granted Yu asylum, if only he had found Yu credible. Credibility determinations are findings of fact,[2] falling within

---

[2]Our circuit has not officially pronounced this as the official standard, and there seems to be some confusion. In *Gumbol v. INS*, 815 F.2d 406, 412 (6th Cir. 1987), the court reviewed the credibility finding for an "abuse of discretion." Subsequently, the Supreme Court in *Elias-Zacarias* implied the "substantial evidence" standard is correct. 502 U.S. at 481. While most of our sister circuits use the "substantial evidence" standard, *see, e.g., Bojorques-Villanueva v. INS*, 194 F.3d 14, 15-16 (1st Cir. 1999); *Ahmad v. INS*, 163 F.3d 457, 461 (7th Cir. 1999), the Sixth Circuit's unpublished opinions are split. In *Jarjiss v. Reno*, 191 F.3d 452, 1999 WL 776186, at *1 (6th Cir. Sept. 20, 1999), a panel still cited *Gumbol*'s "abuse of discretion" standard, while another panel in *Arboleda*

---

the first step of determining whether the alien qualifies as a refugee. *See Dia*, 353 F.3d at 247. Thus, we are reviewing the IJ's adverse credibility determination for "substantial evidence," reversing only if "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). Under this highly deferential standard, we uphold the IJ's decision because the IJ laid out numerous grounds for his adverse credibility finding.[3]

The IJ based his decision on implausibilities and inconsistencies, using Yu's four separate statements taken from his airport interview,[4] asylum application, credible fear interview, and his testimony in front of the IJ. On implausibilities, the IJ found it farfetched that (1) Yu's wife did not find the four boxes (each the size of a 14-inch TV) of Falun Gong materials stashed in the kitchen for ten months, (2) Yu got rid of only one of the four boxes, endangering his wife and child in the house, after the police had dragged Wang out of Yu's house for being a Falun Gong member, and (3) when coming to the United States for asylum, Yu so easily

---

*v. INS*, 2002 WL 31477862, at *2 n.3 (6th Cir. Nov. 5, 2002), recognized that *Elias-Zacarias* changed the standard. Today, we officially adopt the "substantial evidence" standard.

[3]Since Yu does not establish eligibility for asylum, he does not meet the more stringent standards required for withholding or the Torture Convention. *See Mikhailevitch*, 146 F.3d at 391.

[4]Yu refused to sign his interview statement because he claimed the translation produced errors. Both the Ninth and Third Circuits have discredited the reliability of initial airport interviews as "not sufficient standing alone" to be a reliable impeachment source because of the conditions under which they are taken (e.g., right off the plane, translation problems). *See Singh v. INS*, 292 F.3d 1017, 1021-24 (9th Cir. 2002); *accord Senathirajah v. INS*, 157 F.3d 210, 217-18 (3d Cir. 1998). Assuming, without deciding, that our sister circuits are correct, Yu still would not prevail. The interview discrepancies in this case make up only part of the IJ's basis, and do not "stand alone."

exited China when the police came to arrest him at his home a month earlier.

In addition, there are three major inconsistencies going to the "heart of [Yu's] asylum claim," *Valderrama v. INS*, 260 F.3d 1083, 1085 (9th Cir. 2001), namely, his fear of persecution for Falun Gong. First, Yu claimed that he obtained visas (for Malaysia, etc.) to leave China in August 2001, fearing persecution after Wang's arrest in July, but the visas were issued to him before Wang's arrest in June. After being called on this, Yu changed his testimony to Wang's arrest occurring in June rather than July. Even if this were true, the IJ pointed out that it would be implausible for Yu to obtain the visa instantaneously with the arrest, especially when he acquired the visa through a third-party travel agency. Second, Yu never mentioned Falun Gong during his initial airport interview, but only asserted it later in his application. Third, he initially claimed that he had never seen a letter from his wife warning him not to return to China because the police were looking for him, but then changed his mind and said that he had seen it, describing its contents in detail.

Although the other remaining discrepancies could be characterized as minor inconsistencies "in dates which reveal nothing about an asylum applicant's fear for his safety" that would be an inadequate basis for the adverse credibility finding, *Senathirajah v. INS,* 157 F.3d 210, 221 (3d Cir.1998) (quoting *Vilorio-Lopez v. INS,* 852 F.2d 1137, 1141 (9th Cir.1988)), their cumulative effect gives support to the other grounds. *See Mejia-Paz v. INS*, 111 F.3d 720, 724 (9th Cir. 1997). These minor inconsistencies include: (1) the days Yu spent in Singapore, Malaysia, and Thailand (Yu said 10 days, but the documents read 15 days), (2) the time he started participating in Falun Gong (application read 1999, but Yu testified that he participated in 1996 and joined the organization in 1999), and (3) the month the police apprehended Wang at Yu's house (he switched from July to June). Taking all these implausibilities and inconsistencies

together, we find substantial evidence supporting the IJ's reservations about Yu's credibility.

Yu has many explanations. For example, he claims that it is not implausible that his wife would not find the boxes because the kitchen cupboard was never used, that he did not destroy the other three boxes because they would not burn, and that he easily left the country because there was no "official written" warrant for his arrest until February 2002. Yu's explanations provide some support against the IJ's adverse credibility determination, but there is nothing in Yu's explanations that meet the high standard of *compelling* a contrary result. The IJ justified his determination with several grounds in the record and found that Yu often turned "on a dime in his testimony." Although some of the IJ's grounds seem weak when the discrepancies are viewed in the context of the surrounding record, we cannot say that a "reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B)*; see also Elias-Zacarias,* 502 U.S. at 483-84.

AFFIRMED.