Han G. CHEN, Petitioner,

v.

John ASHCROFT, United States Attorney General, Respondent.

No. 02–4168.

United States Court of Appeals, Sixth Circuit.

May 4, 2004.

Scott E. Bratton, Margaret Wong & Associates, Cleveland, OH, for Petitioner.

Margaret K. Taylor, Margaret J. Perry, U.S. Department of Justice, Office of Immigration Litigation, Washington, DC, for Respondent.

Before: SUHRHEINRICH, GIBBONS and SUTTON, Circuit Judges.

SUTTON, Circuit Judge.

Invoking the Convention Against Torture. Han G. Chen filed an application with the INS (presently the United States Citizenship and Immigration Services) seeking an order withholding his removal from the United States. An Immigration Judge denied his claim after concluding that his testimony in support of the application was not credible. The Board of Immigration Appeals adopted the Immigration Judge's opinion and affirmed. Seeing no error in the Immigration Judge's decision, we deny the petition.

## I.

### A.

A citizen of the People's Republic of China. Chen entered the United States illegally in 1991. When the INS learned of his illegal entry, it sought an order of exclusion. Chen did not appear at the hearing, after which an Immigration Judge granted the order of exclusion *in absentia* on September 20, 1991.

Chen nonetheless remained in the United States. In 1999, he filed a motion to reopen his case and an application seeking relief under the Convention Against Torture and Other Cruel. Inhuman or Degrading Treatment or Punishment, *opened for signature* Feb. 4, 1985, S. Treaty Doc. No. 100–20 (1988), 1465 U.N.T.S. 85. *See*

8 C.F.R. § 208.16(c) (authorizing withholding of removal under the Convention–Against Torture). Chen presented three claims in support of his application: (1) he would be punished for failing to pay a fine imposed on him in 1991 for violating China's family planning laws; (2) he would be sterilized because he violated China's family planning laws: and (3) he would be punished for participating in an anti-government student protest in 1989.

On October 24, 2001, the Immigration Judge held a hearing on Chen's application. Chen appeared as the only witness and presented the following evidence in support of his application. Chen and his wife had their first child in 1982. Although China at that time limited families to one child, the Chens had a second child in 1984. When the government learned about the birth of Chen's second child, it ordered Chen's wife to implant an intrauterine device in 1985. The Chinese government also imposed a fine, which Chen refused to pay. The Chens eventually convinced a doctor to remove the intrauterine device, and Chen's wife became pregnant again in 1990. Upon learning of the pregnancy, the Chinese government forced her to have an abortion, and increased the fine imposed on Chen, which he finally paid in 1991. As a result of the third pregnancy, the Chinese government ordered Chen and his wife to be sterilized. Chen refused to comply, but local officials forced his wife to undergo the procedure. At the hearing, Chen also testified that he participated in a 1989 student protest against the Chinese government at a train station in Fuzhou City.

On cross-examination, Chen acknowledged a number of inconsistencies in his immigration application and testimony. In his immigration application, Chen said that he feared the Chinese government would "extort" a 5,000 renminbi (RMB) fine from him before allowing his children to attend

school. But in his testimony at the hearing, he said that he paid the 5,000 RMB fine in 1991 so that his children could attend school. In his immigration application, he said that the government "forced [his wife] to be involuntarily sterilized." JA 65, and he testified that "she was forced" to be sterilized, JA 425. But on cross-examination, he acknowledged that she voluntarily submitted to sterilization because "if she didn't get sterilized there was no way the kids could study." JA 438. In his direct examination he testified that he feared forced sterilization himself. But on cross-examination he admitted that was not true: "Well, I'm not scared of being sterilized. What I'm more scared of is that I ran away and that's against the law." *Id.* In his immigration application, he claimed a fear of torture arising from his participation in the 1989 Tiananmen Square anti-government protest. But at the hearing, he stated that the protest in which he participated occurred in Fuzhou City. Furthermore, when asked to explain why he remained in China for two years after the demonstration, why he was never arrested and why he had a reasonable fear of torture 12 years after the demonstration, Chen could say only that "I just feel ... if I go back there will still be an outstanding warrant for my arrest." JA 429. Finally, when asked how his threat-of-torture claim was consistent with his 1994 application to return to China voluntarily, he claimed that he wanted to care for his sick father and hoped that he could "sort of sneakingly go[ ] to visit him without officials finding out." *Id.*

### B.

In an oral decision, the Immigration Judge found that Chen's testimony was not worthy of belief. Among other reasons, the judge (1) pointed to the inconsistency between Chen's immigration application claim that he feared the imposition of a fine and his testimony that he had already paid the fine, JA 10; (2) concluded that Chen's desire to return to China in 1994 "completely undermines his assertion that he is legitimately afraid of being tortured." JA 11; and (3) found "the fact that there is a difference in versions of what happened in 1989, and the fact that the respondent's explanation today of what happened in 1989 does not appear in the [immigration application], casts doubt on the overall credibility of the claim," *id.*

### II.

In the face of these findings, Chen faces a difficult burden, one that he cannot surmount in the end. To obtain withholding of removal under the Convention Against Torture, "[t]he burden of proof is on the applicant ... to establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16(c)(2). Whether Chen met this burden with credible testimony is a factual issue. "[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *see Yu v. Ashcroft,* 364 F.3d 700, 702 (6th Cir.2004) ("[F]indings of fact are [reviewed under 8 U.S.C. § 1252(b)(4)(B), which] basically codifies the Supreme Court's substantial evidence standard.").

The record amply supports the Immigration Judge's findings of fact, including the finding that Chen's claims were not worthy of credence. Chen made a number of contradictory assertions and each of them involved the very "facts" that purported to support his fear of torture upon returning to China. Even if the prospect of being forced to pay an outstanding fine presented a risk of torture (which seems doubtful), Chen acknowledges that he paid the fine. Chen concedes that his wife's sterilization was not involuntary and that he no longer fears sterilization. He acknowledges that he raised inconsistent

claims about his participation in anti-government demonstrations in 1989 and that he remained in China for two years after 1989, both of which undermine the risk of arrest, let alone the risk of torture, 12 years later. And Chen's voluntary efforts to return to China in 1994 go a long way to discrediting the fear-of-torture premise of his application. Because no "reasonable adjudicator would be compelled" to assess the facts on this record differently from the way the Immigration Judge assessed them, 8 U.S.C. § 1252(b)(4)(B), we credit her findings, including most significantly her credibility findings. In view of those findings, Chen has failed to "establish that it is more likely than not that he ... would be tortured if removed" to China. 8 C.F.R. § 208.16(c)(2).

## III.

For the foregoing reasons, we deny Chen's petition for review.