**Feng CHEN, Petitioner–Appellant,**

v.

**John ASHCROFT, Respondent–Appellee.**

No. 03–3028.

United States Court of Appeals, Sixth Circuit.

Aug. 31, 2004.

Thomas V. Massucci, New York, NY, for Petitioner.

Anthony W. Norwood, U.S. Department of Justice Immigration Litigation, Civil Divison, Washington, DC, for Respondent.

Before MOORE and SUTTON, Circuit Judges; and ADAMS, District Judge.*

PER CURIAM.

Feng Chen, a native of the People's Republic of China, sought asylum and withholding of removal, claiming he has suffered persecution as a result of China's coercive family planning policies. The Immigration Judge ("IJ") rejected his claim and the Board of Immigration Appeals summarily affirmed that decision. We now affirm the IJ's decision.

Chen entered the United States in December 1997 as a non-immigrant visitor. The INS commenced removal proceedings against Chen in 1998, and Chen filed an application for asylum and withholding of removal in early 1999.

Chen's application gives the following account. In May 1989, two months after his wife gave birth to their second child, his wife underwent a tubal ligation. At some point after the procedure, he was fined 4,800 renminbi (RMB) (roughly $600) for the excess birth and, when he protested the fine, the government raised the fine to 10,000 RMB (roughly $1200). The con-

* The Honorable John R. Adams, United States District Judge for the Northern District of Ohio, sitting by designation.

frontation between Chen and the government escalated, and at some point he struck a government official. The government ordered Chen to be sterilized after the assault. In view of these actions, Chen felt compelled to leave Fujian Province, where his wife and sons lived, and to remain in hiding in China for many years. "Eventually," he notes, "the government catches up to me, and I have to flee again to another location." JA 214. He ultimately decided to go to the United States so that he "would not have to keep hiding and moving around." JA 216.

At his asylum hearing, Chen gave the following account. The government forcibly sterilized his wife after the birth of their second child, he was fined for having an additional child and he struck a government official, all of which prompted him to flee his native province of Fujian in 1989. Because he feared being arrested for the assault, he lived in different provinces, spending six months in the province of Jiangxi and seven years in the province of Hubei. While he was able to find work in both places, he left Jiangxi for Hubei and later Hubei for the United States because he "could not make much money." JA 73—74, 92. He did not say that he feared forced sterilization upon return but stated that he feared being arrested and jailed because of his assault on a government official. His wife, children and parents still live in Fujian, and he did not say whether they have been subject to any persecution since he left the province in 1989.

At the conclusion of the hearing, the IJ made an adverse credibility determination against Chen based on the following inconsistencies between his asylum application and his testimony as well as inconsistencies within Chen's testimony itself. First, Chen did not address the issue of his own forced sterilization during his testimony, even though he claimed in his application that there was an order outstanding for his arrest and sterilization. When asked by counsel what made him afraid about returning to China, he stated that he feared he would be arrested, tried and sentenced to a prison term. When Chen's counsel specifically asked whether there was anything else he feared, Chen responded that there was "nothing else." JA 11. Second, while Chen asserted in his application that he went into "hiding" in China because the government was looking for him, his testimony indicated that he lived openly in the provinces of Jiangxi and Hubei. While in Hubei, he testified, he maintained his name and worked in a joint venture between an American-based Chinese individual and a company apparently affiliated with the Chinese government. Chen initially testified that he traveled in and out of Hubei, though he later changed his testimony to say that he did not.

Third, Chen's asylum application stated that the government was pursuing him, forcing him to relocate to different provinces and finally to the United States. In his testimony, however, Chen stated that he left Jiangxi and Hubei at the times he did, not because the authorities were looking for him, but because there was no work. Fourth, Chen's time line of events was not consistent. On direct examination, Chen testified that he fled Fujian at the end of 1989 following the confrontation he had with officials over the excess birth fine. On cross-examination, Chen testified that he fled Fujian immediately following the confrontation, which took place in May 1989. Fifth, Chen's application claimed that the government would force him to pay the unpaid fine when he returned to China, while he testified at the hearing that his wife had already paid the fine.

Finally, the IJ did not believe Chen's claim that the government ordered him to be sterilized as a result of his assault on a local official because, if true, government

officials would have pursued him and his family more aggressively. As the IJ noted, however, his wife and sons have remained in Fujian without incident since the alleged assault. And according to Chen's own testimony, he lived in two other Chinese provinces, one for six months and one for seven years, also without incident. He worked in various jobs during the time he was "hiding" in China and obtained a valid passport in his own name that he used to enter and exit China. "[G]iven the level of animosity implied against [Chen] by the government officials," the IJ concluded that "the respondent's testimony is simply not plausible in light of his claims." JA 14.

These inconsistencies, the IJ determined, went to the heart of Chen's claims. And because his testimony was "not only not credible, but rises to the level of implausible," she concluded that Chen failed to submit reliable credible evidence to support his claims. JA 16. The IJ denied his application, and the Board of Immigration Appeals summarily affirmed this decision without opinion. See Denko v. INS, 351 F.3d 717, 730 (6th Cir.2003).

When the Board of Immigration Appeals applies its summary-affirmance procedure, as it did here, we review the IJ's decision. Yu v. Ashcroft, 364 F.3d 700, 702 (6th Cir.2004). Credibility determinations by the IJ are findings of fact. Id. at 703. And we review an IJ's adverse credibility determination for substantial evidence and will reverse that determination "only if 'any reasonable adjudicator would be compelled to conclude to the contrary.'" Id. (quoting 8 U.S.C. § 1252(b)(4)(B)); see also INS v. Elias–Zacarias, 502 U.S. 478, 481 n. 1, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992). Legal conclusions of the IJ, by contrast, receive de novo review, though reasonable interpretations by the agency are entitled to deference. INS v. Aguirre–Aguirre, 526 U.S. 415, 424—425,

119 S.Ct. 1439, 143 L.Ed.2d 590 (1999); Daneshvar v. Ashcroft, 355 F.3d 615, 627 (6th Cir.2004).

In his petition for review, Chen makes two arguments. He contends that the IJ's adverse credibility finding is not supported by substantial evidence. And he contends that the IJ failed to recognize that the forced sterilization of Chen's wife provides a basis for granting his asylum application.

In view of the inconsistencies that the IJ noted in her opinion as well as other inconsistencies apparent from the record, substantial evidence supports the IJ's adverse credibility determination. For his part, Chen offers no explanation for the discrepancies between his application and testimony and does not direct us to any portions of the record that undermine the IJ's credibility ruling. To the contrary, Chen concedes that the discrepancies found by the IJ "do in fact exist in the record." Pet'r Br. at 11.

Rather than attempt to explain the inconsistencies, Chen claims that the IJ was "laying in wait for the opportunity to point these 'discrepancies' out in her opinion" and that he was never provided an opportunity to provide explanations for the discrepancies or omissions. Id. But in filling out his asylum application and in giving testimony at the hearing, it was Chen's duty to ensure that he was telling the truth about what happened. See 18 U.S.C. § 1546; 28 U.S.C. § 1746; JA 218 (asylum applicants certify under penalty of perjury that information contained in application is true and correct); 18 U.S.C. § 1621 (falsely testifying under oath before a tribunal is perjury); JA 50 (Chen was under oath when he testified at the hearing). Even if Chen for some reason could not correct these discrepancies, it was certainly something his counsel could have ensured happened. Nothing in the record, however, suggests that the IJ precluded Chen from giving any testimony he wished to give.

Far from undermining the IJ's conclusion or compelling a contrary conclusion, the record supports the IJ's adverse credibility determination. Ample evidence backs up the IJ's analysis and Chen has done little to show how the IJ erred in this regard.

Chen next argues that the IJ applied an incorrect definition of "refugee" in analyzing his claim. Section 101(a)(42)(B) of the Immigration and Nationality Act, he points out, considers forced sterilization to be persecution within the definition of refugee, and *Matter of C–Y–Z,* 21 I & N Dec. 915 (BIA 1997) expands that definition to cover an individual whose spouse was forced to undergo a sterilization procedure. *See also Matter of Y–T–L,* 23 I & N Dec. 601, 607 (BIA 2003) (holding that coerced sterilization should be viewed as "a permanent and continuing act of persecution"). Under this authority and in view of his wife's forced sterilization, he argues, he should have been eligible for asylum.

The problem with this argument is that the factual predicate for it does not exist. The IJ specifically stated that "[t]he fundamental question is whether or not the respondent has been able to establish either of his premises, to-wit[:] that his wife has undergone forced sterilization and/or that he himself would be subject to forced sterilization were he to return to China." JA 15—16. The IJ thus recognized that Chen could prevail if he showed that his wife had undergone forced sterilization. But as the IJ next explained, Chen did not do so based on "specific, credible and direct testimony." JA 16.

Because we find the IJ's decision to be supported by substantial evidence, we deny Chen's petition for review.