NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0341n.06
Filed: May 3, 2005

No. 03-4624

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| Engjell Meta; Buna Meta, | ) | |
| | ) | |
| Petitioners, | ) | |
| | ) | PETITION FOR REVIEW OF AN |
| v. | ) | ORDER OF THE BOARD OF |
| | ) | IMMIGRATION APPEALS |
| Alberto R. Gonzales, Attorney General, | ) | |
| | ) | |
| Respondent. | ) | |

**Before: MERRITT and ROGERS, Circuit Judges; DUPLANTIER, District Judge.**[*]

**Rogers, Circuit Judge.** Engjell Meta and his wife, Buna Meta, Albanian citizens,

petition for review of the Immigration Judge (IJ)'s denial of their application for asylum,

withholding of removal and protection under the Convention Against Torture, affirmed and

adopted by the Board of Immigration Appeals (BIA). The IJ found that Mr. and Mrs. Meta were

ineligible for the relief sought because they were not credible regarding the events they related in

support of their claim of persecution based on political opinion, and they had not established past

persecution or a well-founded fear of future persecution. Because the IJ's findings, affirmed and

adopted by the BIA, were supported by substantial evidence, the Metas' petition for review is

denied.

_____

[*]The Honorable Adrian G. Duplantier, United States District Judge for the Eastern
District of Louisiana, sitting by designation.

1

Mr. and Mrs. Meta are natives and citizens of Albania. Mr. Meta, the lead petitioner in this case, was born in November of 1960 in Korçë, Albania, near the border with Greece. Following Albanian elections in 1992, Mr. Meta became a politically active member of the Democratic Party of Albania (PD) and the owner of a small import-export business that shipped products from Korçë into neighboring Greece. It was in Korçë that he met and married his wife, who accompanied him to the United States on November 30, 2000. After they overstayed their visas, the INS charged the Metas with removability for remaining in the United States without authorization. Conceding removability, the petitioners sought asylum, withholding of removal, and relief under the Convention Against Torture.

Mr. Meta's claim is that he was entitled to asylum because he was unable or unwilling to return to Albania based on a well-founded fear of persecution due to his political opinion. Mr. Meta's written asylum application and testimony relate a number of incidents following the 1997 Albanian elections that form the basis of his claim. According to Mr. Meta, after elections in 1997 brought the Socialist Party back into power, he was arrested following an opposition demonstration in 1998, beaten, detained for three days, and threatened with criminal charges. Then, in 1999, the warehouse where he stored his inventory was burned by "socialist criminal bands" and he was threatened over the phone, but the local authorities refused to intercede. Mr. Meta was an observer during the Albanian elections in September of 2000, but before he could open the ballot boxes he was taken to a police station and questioned. Soon thereafter he spoke

at a rally regarding election irregularities; he stated that as he returned home from the rally he was accosted by the secret police who shot at him as he ran to escape. Following this incident, the Metas obtained visas and traveled to the United States from Tirana.

A hearing was held before the IJ in 2002. Mr. Meta and his wife testified, and Mr. Meta submitted various documents purporting to show his membership in the PD and several other Albanian associations. The IJ determined that these documents were fraudulent based on the fact that "Korçë" as spelled in the documents lacked the diacritical markings seen here. Additionally, the document purporting to establish his membership in the PD was signed by a "Mr. Holli," the local chairman of the PD, whom Mr. Meta supported. However, Mr. Meta's testimony indicated that the individual's name was spelled "Olli." Also introduced at the hearing were two State Department reports on Albania from 2001, which noted that political persecution in Albania was not widespread and that there are few, if any, legitimate claims to political persecution in Albania.

The IJ found the Metas' testimony not to be credible. The IJ found inconsistencies between Mr. Meta's testimony and that of his wife, and between Mr. Meta's testimony and his written statements regarding the events occurring after the Socialists returned to power in 1997. The IJ noted that Mrs. Meta could not give details regarding several of the incidents related by Mr. Meta and at times contradicted his testimony. In finding Mr. Meta was not credible, the IJ noted a lack of detail and logic in the description of the more recent incidents supporting his request for asylum, and specifically in Mr. Meta's version of his encounters with the Albanian

police. Further, Mr. Meta related numerous incidents and details that were not reported in his application for asylum.

The IJ additionally found that Mr. Meta had not established that he was a refugee, i.e. that he did not have a subjectively genuine and objectively reasonable fear of persecution, because even if his story were believed, the government had demonstrated that there was no pattern or practice of persecution based on political affiliation in Albania. The IJ also concluded that Mr. Meta was ineligible for withholding of removal because he could not establish eligibility for asylum, and that he was ineligible for relief under the Convention Against Torture because he presented no evidence he would be tortured if removed to Albania. Finally the IJ found that the application was frivolous. The Metas appealed to the BIA, which reversed the IJ's finding that their asylum application was frivolous, but otherwise adopted and affirmed the IJ's opinion. The Metas now argue that the IJ's decision to deny them asylum was not supported by substantial evidence.[1]

Because the IJ's determinations regarding the Metas' credibility and eligibility for asylum are supported by substantial evidence, their petition for review is denied. The findings of fact of the IJ, including in this case his determinations regarding the credibility of the Metas and their eligibility for asylum, are reviewed under a substantial evidence standard. *Yu v. Ashcroft*,

---

[1]While Mr. and Mrs. Meta sought three forms of relief from the IJ (asylum, withholding of removal, and protection under the Convention Against Torture), on appeal they challenge only the IJ's factual findings that they were not credible and that they were ineligible for asylum.

364 F.3d 700, 702-03 (6th Cir. 2004).  Reversal of such determinations is warranted only where, based on the record, "any reasonable adjudicator would be compelled to conclude to the contrary." *Id.*; *see* 8 U.S.C. § 1252(b)(4)(B).

The IJ's conclusion that the Metas were not credible is supported by substantial evidence. The IJ concluded that the Metas were not credible witnesses based on inconsistencies between their testimony, Mr. Meta's written statement, and the State Department reports offered in support of their asylum application.  The IJ also found that Mr. Meta was not credible because his testimony was internally inconsistent and implausible, and the documents he submitted for corroboration were fraudulent.  It is true that an asylum applicant need not produce corroborating evidence, and the applicant's testimony "can be sufficient to support an application for asylum, where the testimony is believable, consistent, and sufficiently detailed to provide a plausible and coherent account of the basis for his fear," *Pilica v. Ashcroft*, 388 F.3d 941, 954 (6th Cir. 2004). However, there is nothing in the hearing transcript or the documentary evidence supporting the Metas' appeal that would compel a contrary conclusion regarding their credibility.

The IJ's conclusion that the Metas were not "persecuted," and therefore not refugees within the meaning of 8 U.S.C. § 1101(a)(42)(A), is also supported by substantial evidence.  The IJ concluded that even if Mr. and Mrs. Meta were to be believed, they were not persecuted because of their political opinion.   While the incidents related by the Metas after 1997, if true, are unfortunate, they do not amount to persecution within the meaning of the Immigration and Nationality Act, which requires more than isolated instances of abuse or harassment.  *See Pilica*,

388 F.3d at 954; *Mikhailevitch v. INS*, 146 F.3d 384, 390 (6th Cir. 1998).  There is no evidence

in Mr. or Mrs. Meta's testimony or otherwise that would compel a conclusion that they were

persecuted and therefore eligible for asylum.

For the foregoing reasons, the Metas' petition for review is DENIED.