GILMAN, Circuit Judge,
dissenting.
Although the majority articulates the appropriate legal standard for reviewing the BIA’s decision, I believe that it has failed to actually apply that standard to the facts of this case. Specifically, I disagree that “any reasonable adjudicator would be compelled to conclude to the contrary” with regard to the IJ’s adverse credibility determination. 8 U.S.C. § 1252(b)(4)(B). Several inconsistencies cited by the IJ in fact “go to the heart of the applicant’s claim.” Sylla v. INS, 388 F.3d 924, 926 (6th Cir.2004) (citations omitted). They are not, as the majority states, “irrelevant.” (Majority Op. at -)
This is not to say that all of the inconsistencies discussed by the IJ are of equal weight. For example, Ndiaye’s conflicting statements about her husband’s military rank, about where she lived in Mauritania, and about the date of birth of one of her children are clearly not the kinds of inconsistencies that “go to the heart of the applicant’s claim,” Sylla, 388 F.3d at 926.
My concern, however, lies with Ndiaye’s conflicting statements about the details surrounding the two attacks that were allegedly directed against her. In her second application for asylum, for example, Ndiaye stated that the soldiers entering her house during the first visit were merely looking for things belonging to her husband. She does not mention violence of any kind. During the asylum hearing itself, however, Ndiaye testified that these soldiers physically assaulted her, resulting in a broken toe.
There is also conflicting testimony regarding the time frame of the events in question. Ndiaye said on direct examination that there were fifteen days between the two visits by the soldiers. But on cross-examination she said that there were only three days between the two incidents. Ndiaye also testified at the asylum hearing that she was abducted by the soldiers who raped her and that they kept her in a camp for three days. Upon further questioning, however, Ndiaye recanted that version and said that the “true story is that I was raped and I left on my own.”
In addition, the record is conflicting with regard to when Ndiaye left Mauritania for Senegal. She stated in her original application that she first went to a refugee camp for three weeks. Admittedly, this application, as the majority notes, is not reliable. This might explain why, when questioned on the point during cross-examination, Ndiaye testified that she left for Senegal three days after the second attack, during which time she was allegedly held captive by the soldiers. But she immediately changed her story yet again, testifying that she had never been held captive and that she had left for Senegal the day after she was raped by the soldiers.
These inconsistencies go to the heart of her claim because they suggest that the attacks in question might never have happened. If they had, one would expect Ndiaye to have been able to recount the factual details surrounding the attacks and her departure for Senegal far more clearly and consistently. I therefore disagree with the majority that these inconsistencies are simply irrelevant. (Maj. Op. at 8)
In sum, I believe that there is substantial evidence supporting the IJ’s adverse credibility determination. Although an *413 other IJ might have decided the present case differently, there are enough inconsistencies regarding the alleged attacks to prevent a reasonable adjudicator reviewing these facts from being “compelled to conclude to the contrary.’ ” Yu v. Ashcroft, 364 F.3d 700, 702 (6th Cir.2004) (quoting 8 U.S.C. § 1252(b)(4)(B)); see also Sylla, 388 F.3d at 925 (explaining that the substantial-evidence standard used in reviewing credibility determinations “is a deferential standard: A reviewing court should not reverse simply because it is convinced that it would have decided the case differently”) (citation and quotation marks omitted). I therefore believe that the appropriate disposition of this case is to deny Ndiaye’s petition for review on the basis of the IJ’s adverse credibility determination.