**NOT RECOMMENDED FOR FULL TEXT PUBLICATION**
File Name: 06a0875n.06
Filed: December 5, 2006
No. 05-4406

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

HAITHAM-ALI ZEIN,
*Petitioner*

On Petition for Review of a Decision of the
Board of Immigration Appeals

v.

ALBERTO R. GONZALES,
ATTORNEY GENERAL OF THE UNITED STATES,
*Respondent*

_____/

**BEFORE: KENNEDY, COLE, AND COOK Circuit Judges.**

**KENNEDY, Circuit Judge.** Haitham-Ali Zein appeals the denial of his applications for asylum under Section 208(a) of the Immigration and Nationality Act, withholding of removal under Section 241(b)(3) of the same act, and relief under the Convention Against Torture, 8 C.F.R. 1208.18(c). The immigration judge denied Zein relief because he lacked credibility. Because the immigration judge's denial is supported by substantial evidence in the record, we **AFFIRM**.

**I. Background**

Haitham-Ali Zein, a native of Lebanon, entered the United States from Mexico on the 17th of November, 2000 at the San Ysidro, California port of entry. The driver of the car in which he was riding falsely declared Zein to be a United States citizen. Zein was detained and interviewed by an Immigration Inspector. In the interview, Zein declared that he was visiting the United States as a tourist, was only traveling to eat at a McDonald's, and did not know that the United States was the destination of the car because he did not know the border was so close. In addition, in response to

questioning, he stated that he had no fear about being returned to his home country and would not be harmed if he returned.

On January 11, 2001, an Asylum Officer conducted a credible fear interview. In the interview, Zein, according to the officer's notes, "credibly testified that he left Lebanon because he was threatened by the Syrian authorities and the [Hizballah][1] political group because he participated in two anti-Syrian demonstrations." Zein further stated that after the second demonstration he fled to avoid capture and hid in a village for 25 days before Hizballah took control of the village, captured him, and threatened to kill him if he did not join them. He stated that he joined the group to avoid harm but ran away when he had the opportunity. Under the heading "Credibility," the officer checked, "There is a significant possibility that the assertions underlying the applicant's claim could be found credible in a full asylum or withholding of removal hearing," and, under the heading "Credible Fear Finding," the officer checked, "Credible fear of *persecution* established" (emphasis in original).

On January 24, 2001, Zein was served with a Notice to Appear before an Immigration Judge (IJ) and was released from the custody of the Immigration and Naturalization Service (now Department of Homeland Security) on parole on January 31, 2001.

Zein moved to change venue from San Diego to Detroit. The IJ in San Diego granted his request on the condition that he admit the factual allegations in the Notice to Appear, specifically that he verbally declared himself to be a United States citizen at the border, which he had previously contested.

---

[1]The spelling of the name of this organization varies among the documents submitted by the parties. We adopt the spelling found in the U.S. Department of State's country report on Lebanon.

2

At a hearing in Detroit on October 9, 2001, Zein conceded his removability and, on November 2, 2001, filed an application for asylum and withholding of removal. In the application he more fully explained the circumstances surrounding the second demonstration and his subsequent flight and capture by Hizballah. He stated that he spent 8 days in a Hizballah training camp, during which he "received military training and lecturing." He further stated that he escaped from the camp and contacted his relatives who bribed a security official to secure him a visa to Mexico.

A merits hearing was held in Detroit, but the transcript is undated. In support of his claims, Zein testified and offered a letter from his family in Lebanon, his official documents from Lebanon, his asylum application, and other documents. On May 4, 2004, the IJ issued an oral decision denying Zein all relief because his testimony was "inconsistent [among] his testimony [at the merits hearing], the information he gave at the airport,[2] and the credible fear interview." IJ Op. at 6. Specifically, the IJ found:

> For example, the respondent made no mention of the demonstration during his question and answer interview at the airport. He did mention the demonstration during his credible fear interview. However, he indicated that 150 people participated in the demonstration and that it occurred on October 7th. In his testimony he indicated it occurred on October 1st, and there were 50-70 people. In his credible fear interview, he indicated that the demonstration actually occurred. According to his testimony in Court, the demonstration in fact never occurred because the Syrian authorities prevented it, and there was an argument.
> The respondent did not mention in the question and answer statement or in his credible fear interview that he was arrested by [Hizballah] and escaped from their camp. Though he did indicate that Syrian intelligence and [Hizballah] had come to his house.
> The Court also notes that the respondent has misrepresented the number of times and length of time that he has been in Syria. The respondent initially indicated that he had only been there twice and inferred that it was for a short period of time.

---

[2]We assume that the IJ intended to refer to the automobile border crossing where all the evidence indicates Zein entered the United States.

It appears from his later testimony, he was there for a substantial period of time, and his passport indicates that he has been to Syria on several different occasions.

In addition, the Court notes that the respondent's testimony was quite evasive, frequently unresponsive, and not forthright.

IJ Op. at 7-8.

The Board of Immigration Appeals affirmed the IJ's decision without opinion. Zein appeals.

## II. Discussion

### A. Standard of Review

Where, as here, the Board of Immigration Appeals affirms the IJ's decision without opinion, we review the IJ's opinion. *Denko v. INS*, 351 F.3d 717, 723 (6th Cir. 2003); 8 C.F.R. 1003.1(e)(4).

"Credibility determinations are considered findings of fact, and are reviewed under the substantial evidence standard." *Sylla v. INS*, 388 F.3d 924, 925 (6th Cir. 2004). While a credibility determination "must be supported by specific reasons . . . that go to the heart of the applicant's claim," *Sylla*, 388 F.3d at 926, we "may not reverse . . . simply because we would have decided the matter differently." *Koliada v. INS*, 259 F.3d 482, 486 (6th Cir. 2001). Rather, our standard is "highly deferential," *Yu v. Ashcroft*, 364 F.3d 700, 703 (6th Cir. 2004), and, by statute, an IJ's "findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). Therefore, we must determine whether "any reasonable adjudicator" could have found that Zein's testimony was not credible.

### B. The IJ's decision, while flawed, is supported by substantial evidence

The IJ's opinion was flawed in several respects. First, it was simply incorrect in stating, "[t]he respondent did not mention in the question and answer statement or in his credible fear interview that he was arrested by [Hizballah] and escaped from their camp." IJ Op. at 7. The notes

4

of the interviewer, in answer to question 3.1(a), which asks if Zein was ever mistreated or threatened, state, "[t]he [Hizballah] group then threatened to kill the applicant of [sic] he did not join their group. Applicant stated that he agreed to join their group to avoid any further harm and then ran away when he had the opportunity."

Second, several of the inconsistencies the IJ identified do not go to the heart of Zein's claim. "[M]inor and irrelevant inconsistencies cannot constitute the basis for an adverse credibility determination. . . . [Such] variations, misstatements, or inconsistencies should . . . play[] no part in the decision of the IJ. . . ." *Sylla*, 388 F.3d at 926. The IJ noted that Zein "misrepresented the number of times and length of time that he has been in Syria." IJ Op. at 7. At the merits hearing, the government argued that this misrepresentation was significant because Zein would not go to Syria if he was afraid of Syrians. The government argued that his fear of Syrians was his stated reason for seeking asylum. However, his stated fear of the Syrian authorities dates from the second protest, after which he never returned to Syria, but rather fled with a fellow demonstrator to the south of Lebanon while waiting for a visa to Mexico. Therefore, the number and length of his trips to Syria are not relevant to the issue of whether his story of the demonstrations and subsequent encounter with Hizballah is credible.

Third, the IJ relied heavily on the discrepancies between Zein's "airport" testimony and his subsequent testimony. We have noted that, "[b]oth the Ninth and Third Circuits have discredited the reliability of initial airport interviews . . . because of the conditions under which they are taken (e.g., right off the plane, translation problems)." *Yu*, 364 F.3d at 703 n.4 (internal citations omitted). These conditions were surely present when Zein arrived in San Ysidro.

5

As in *Yu*, however, "[a]ssuming without deciding, that our sister circuits are correct, [Zein] still would not prevail. The interview discrepancies in this case make up only part of the IJ's basis, and do not stand alone." *Id.* (internal citations and quotation marks omitted). The IJ in this case had ample basis on which to base her decision. The IJ noted that there were discrepancies in Zein's description of the demonstration. During the merits hearing, the IJ repeatedly asked for any evidence (or for some explanation if no evidence was available) of the demonstration. Zein was evasive and unresponsive to these requests.

The IJ also noted that Zein was generally, "quite evasive, frequently unresponsive, and not forthright." IJ Op. at 8. The IJ is in the best position to determine credibility based on the demeanor of the witness and so we will not overrule that determination lightly.

The government in its brief also notes inconsistencies that the IJ did not mention in her list of examples. A sample: Zein's testimony was inconsistent as to what date he first had trouble with Syrian authorities. Zein stated that he did not know about political asylum when he arrived in the United States but also testified that he would have sought asylum in Mexico, but did not feel safe. Zein testified to different numbers of participants in the demonstrations.

Again, as we found in *Yu*, "[a]lthough the other remaining discrepancies could be characterized as minor inconsistencies . . . that would be an inadequate basis for the adverse credibility finding, their cumulative effect gives support to the other grounds." *Yu*, 364 F.3d at 704 (citations omitted). In total, they constitute substantial evidence such that a reasonable finder of fact could conclude that Zein was not credible. Zein has not overcome the burden of this highly deferential standard.

### III. Conclusion

For the foregoing reasons, we **AFFIRM** the decision of the Board of Immigration Appeals.