**Not Recommended For Full-Text Publication**
**File Name: 09a0773n.06**

**No. 08-4345**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| PAPA NDIAYE, | ) | |
| | ) | |
|     Petitioner, | ) | |
| | ) | |
| V. | ) | |
| | ) | ON PETITION FOR REVIEW FROM |
| ERIC H. HOLDER, JR., Attorney General of | ) | THE BOARD OF IMMIGRATION |
| the United States; IMMIGRATION AND | ) | APPEALS |
| NATURALIZATION SERVICE, | ) | |
| | ) | |
|     Respondent. | ) | |

**FILED**
**Dec 08, 2009**
LEONARD GREEN, Clerk

Before: MARTIN and SUTTON, Circuit Judges; REEVES, District Judge.[*]

DANNY C. REEVES, District Judge. Petitioner Papa Ndiaye seeks review of the Board of Immigration Appeals' (BIA) decision affirming the denial of his application for asylum and withholding of removal under the Immigration and Nationality Act (INA). Ndiaye raises two issues through this appeal: (1) whether the Immigration Judge's (IJ) determination that Ndiaye was not a credible witness was erroneous; and (2) whether the IJ incorrectly found that the conditions have fundamentally changed in Mauritania. For the reasons that follow, we conclude that the record supports the IJ's finding as to each issue. Accordingly, we **DENY** Ndiaye's Petition for Review.

---

    * The Honorable Danny C. Reeves, United States District Judge for the Eastern District of Kentucky, sitting by designation.

**I.**

Ndiaye entered the United States in October 1999.  On December 29, 1999, he affirmatively

applied for asylum, withholding of removal under the INA, withholding of removal under the

regulations implementing the Convention Against Torture, and voluntary departure.  Ndiaye

contends that he and his family were mistreated and that he was deported from Mauritania based on

his Wolof ethnicity.  On the application, Ndiaye asserts that he is a citizen of Mauritania.

In June 2003, Ndiaye failed to appear in immigration court and was ordered to be removed

in absentia.  He later moved to re-open the case because he did not receive notice of the hearing date.

The court granted the motion.  In March 2006, Ndiaye again failed to appear in immigration court.

And again, Ndiaye moved to re-open his case because he asserted that he did not receive notice of

the hearing date.  The court also granted the second motion to re-open.  On September 24, 2007, the

IJ held a televideo hearing at which Ndiaye appeared as the only witness.

Ndiaye testified that he was born in Mauritania in 1975.  He claimed that, in 1991, he was

detained by the Mauritania government in a military camp, forced to carry heavy bricks, and was

beaten when he refused.  Ndiaye claims that he was later deported to Senegal.  In fact, Ndiaye

testified that almost all black Wolofs were deported from Mauritania starting in 1991.  Ndiaye's

mother, sister, and the mother of one of his children live in Senegal.  Additionally, his wife is a

citizen of Senegal.  However, he confirmed that he did not ask his mother, sister, or the mother of

his Senegalese-born child for an affidavit or a letter in support of his claim.

Ndiaye testified that, in 1999, he obtained a visa containing his photograph but having a

different name.  Although he allegedly flew to New York with this visa, he contends that he lost his

passport, visa, and birth certificate shortly after his arrival. However, he did not attempt to obtain replacement copies.

In concluding that the evidence supported a finding that the Petitioner is from Senegal rather than Mauritania, the IJ considered the substance of Ndiaye's testimony as well as his demeanor. Specifically, the IJ noted that Ndiaye's testimony was quite vague and non-specific concerning the incidents allegedly occurring in Mauritania. The IJ further noted a discrepancy regarding the deportation of black Wolofs from Mauritania. Although Ndiaye testified that the deportation occurred primarily in 1991, the IJ found that the primary period of deportation was two years earlier. The IJ also found Ndiaye's testimony that virtually all black Wolofs were deported from Mauritania to Senegal to be incorrect.

The IJ also determined that Ndiaye has no objectively reasonable fear of future persecution in Mauritania. In addressing the current conditions in Mauritania, the IJ found that the Government has shown by a preponderance of the evidence that, while things may be far from perfect in Mauritania today, a black Wolof would have no reasonable fear of persecution upon his return. The IJ noted that former Mauritanian President Taya was deposed in a bloodless coup in 2005, and there have been fair and free elections in recent years. In support, the IJ points to the State Department Human Rights Report that evidences that many of those who were forcibly deported to Senegal around 1989 have voluntarily returned to Mauritania, and that many have been able to reacquire some or all of their property. The IJ acknowledges that the country report indicates that there is still continuing harassment and discrimination against ethnic and racial minorities in Mauritania. However such harassment does not rise to the level of persecution.

The BIA adopted and affirmed the decision of the IJ. The BIA took administrative notice of the latest country report for Mauritania indicating that the Mauritanian government specifically took steps to prepare for the repatriation of thousands of Afro-Mauritanians living as refugees due to their expulsion during ethnic tensions and violence in 1989-91. Ndiaye timely appealed.

**II.**

This Court has jurisdiction to hear this appeal. 8 C.F.R. §§ 1003.1(b)(3), 1240.15. The Court's jurisdiction is governed by 8 U.S.C. § 1252. Where the BIA adopts the IJ's reasoning while adding its own comments, the Court will directly review the decision of the IJ while considering the additional comment made by the BIA. *Gilaj v. Gonzales*, 408 F.3d 275, 282-83 (6th Cir. 2005). Here, the Petitioner is seeking a grant of asylum and withholding of removal. Because the withholding of removal standard is more stringent than that governing asylum cases, an applicant that is denied asylum is ineligible for withholding of removal. *Zhao v. Holder*, 569 F.3d 238, 246 n. 10 (6th Cir. 2009). The Attorney General has discretion under the INA, 8 U.S.C. § 1158(a), to grant asylum to a "refugee." *Gilaj*, 408 F.3d at 283 (citing *Perkovic v. INS*, 33 F.3d 615, 620 (6th Cir. 1994)). The disposition of an application for asylum involves a two-step inquiry: (1) whether the applicant qualifies as a "refugee" as defined in 8 U.S.C. § 1101(a)(42)(A), and (2) whether the applicant "merits a favorable exercise of discretion by the Attorney General." *Id*. (citing *INS v. Cardoza-Fonseca*, 480 U.S. 421, 428 n. 5 (1987)).

In the context of this appeal, a refugee is:

> any person who is outside any country of such person's nationality or, in the case of a person having no nationality, is outside any country in which such person last habitually resided, and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

8 U.S.C. § 1101(a)(42)(A) (2009). The burden is on the applicant to establish that he qualifies as a refugee. 8 C.F.R. § 1208.13(a)-(b). The applicant's testimony, if credible, "may be sufficient to sustain the burden of proof without corroboration." 8 C.F.R. § 1208.13(a).

This Court reviews the factual determination of whether a petitioner qualifies as a refugee under a "substantial evidence" test. *Gilaj*, 408 F.3d at 283 (citing *Yu v. Ashcroft*, 364 F.3d 700, 702 (6th Cir. 2004)). The court may reverse the BIA's determination if the evidence "not only supports a contrary conclusion, but indeed compels it." *Ouda v. INS*, 324 F.3d 445, 451 (6th Cir. 2003).

## III.

### A.     The IJ's Credibility Determination

During the hearing in immigration court, Ndiaye provided only his testimony to support his claim that he was a citizen of Mauritania. The applicant's testimony, if credible, "may be sufficient to sustain the burden of proof without corroboration." 8 C.F.R. § 1208.13(a). The IJ found that because Ndiaye was not a credible witness, he failed to meet the burden of proof to show he was a refugee. This Court affords an adverse credibility finding substantial deference; however, "the finding must be supported by specific reasons." *Pergega v. Gonzales*, 417 F.3d 623, 627 (6th Cir. 2005) (*quoting Sylla v. INS*, 388 F.3d 924, 926 (6th Cir. 2004)).

The IJ provided specific reasons explaining his determination that Ndiaye's testimony was not credible. The IJ categorized Ndiaye's testimony as "quite vague and non-specific concerning what he claims happened to him in Mauritania and why." The IJ further pointed out that Ndiaye incorrectly stated the year the forcible deportations of black Wolofs began and incorrectly asserted all black Wolofs were deported from Mauritania to Senegal. The IJ also considered Ndiaye's lack of an attempt to get replacement copies of his Mauritania passport or birth certificate as an additional factor indicating he was not a credible witness. Further, the IJ noted that many of Ndiaye's family members were born or live in neighboring Senegal.

In short, the record does not support or compel a contrary conclusion regarding Ndiaye's credibility. The IJ provides specific and sufficient reasoning for his determination that Ndiaye was not a credible witness and that he did not meet his burden of proof to show he is a refugee.

### B.      *Changed Conditions in Mauritania*

Ndiaye also challenges the finding that conditions in Mauritania have changed fundamentally. Again, however, Ndiaye must overcome the "substantial evidence" test. *Gilaj*, 408 F.3d at 283 (citing *Yu*, 364 F.3d at 702). To qualify as a refugee, Ndiaye must show that he is unable or unwilling to return to Mauritania because of persecution or a well-founded fear of persecution on account of his race or ethnicity. *See* 8 U.S.C. § 1101(a)(42)(A) (2009). Based on the improved conditions in Mauritania, the IJ found that Ndiaye has no objectively reasonable fear of future persecution. To overturn this decision, the petitioner must demonstrate "that the evidence presented was so compelling that no reasonable fact finder could fail to find the requisite persecution or fear of persecution." *Ouda*, 324 F.3d at 451.

The IJ acknowledges continuing harassment and discrimination against racial and ethnic minorities in Mauritania. However, such actions do not rise to the level of persecution. The IJ states that a new government was established in 2005 by a bloodless coup. Further, fair and free elections have been conducted for the last couple of years. The IJ explains that many of those individuals deported to Senegal have voluntarily returned to Mauritania and reacquired some or all of their property. Further, the BIA took administrative notice that the Mauritanian government has taken steps to prepare for the repatriation of thousands of Afro-Mauritanians expelled during ethnic tensions and violence in 1989-91.

The record does not support or compel a contrary conclusion regarding the improved conditions in Mauritania. The IJ and BIA provide specific and compelling reasoning for concluding that the conditions in Mauritania have improved and that Ndiaye cannot overcome the "substantial evidence" test. Based on the fundamental change in conditions in Mauritania, Ndiaye has no objectively reasonable fear of future persecution. Likewise, he has not demonstrated that he is a refugee.

**IV.**

We **DENY** Ndiaye's Petition for Review.