NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0168n.06

No. 09-3369

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Mar 17, 2010**
LEONARD GREEN, Clerk

ALI KASSEM KHALIL,                                    )
                                                      )
    Petitioner,                   )
                                                      )
v.                                                    )  ON PETITION FOR REVIEW OF
                                                      )  AN ORDER OF THE BOARD OF
ERIC H. HOLDER, JR., Attorney General,                )  IMMIGRATION APPEALS
                                                      )
    Respondent.                   )
                                                      )
                                                      )

Before: DAUGHTREY, GILMAN, and KETHLEDGE, Circuit Judges.

KETHLEDGE, Circuit Judge.  Ali Kassem Khalil, a native and citizen of Lebanon, petitions for review of an order of the Board of Immigration Appeals (BIA) denying his application for asylum.  We deny the petition in part and dismiss it in part.

I.

In May 2003, Khalil was apprehended at the border as he tried to cross illegally from Mexico into the United States.  Shortly afterwards, he was questioned by immigration officials with the assistance of an Arabic-speaking interpreter.  During his initial interview, he did not claim that he was afraid to return to Lebanon.

After Khalil was placed in removal proceedings, however, he sought asylum, withholding of removal, and relief under the Convention Against Torture.  He filed two written applications for

those forms of relief, the first prepared with the assistance of another inmate while he remained in custody and the second with the assistance of counsel after he had posted bond and been released. In both applications, Khalil claimed that he feared persecution from Hezbollah if he returned to Lebanon.

At a hearing before an immigration judge (IJ), Khalil testified that in Beirut he had been abducted and tortured by Hezbollah militants because he refused to help them recruit local youth who congregated at the barber shop he owned and operated. He claimed that he was hospitalized as a result of his injuries, and that after his release he mostly stayed at home to recuperate and hide from Hezbollah until he could flee the country.

The IJ disbelieved Khalil's story and denied relief, citing several inconsistencies and omissions in Khalil's oral testimony and written applications. The BIA affirmed in a brief opinion, holding that the IJ's adverse credibility determination was not clearly erroneous. Khalil then filed this petition for review.

## II.

Khalil first contends that the IJ and BIA erred in denying his application for asylum. To be eligible for that relief, Khalil had to show that he is a "refugee," 8 U.S.C. § 1158(b)(1), which is to say that he is unable or unwilling to return to his native country because of past persecution or a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. *Id.* § 1101(a)(42)(A).

Here, Khalil's attempt to make the required showing was foreclosed by the IJ's finding that he was not a credible witness. That factual determination receives substantial-evidence review, *see*

No. 09-3369
*Khalil v. Holder*

*Yu v. Ashcroft*, 364 F.3d 700, 703 n.2 (6th Cir. 2004), which means it is "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). At the same time, however, the IJ must articulate "specific reasons" for finding an asylum applicant incredible. *Koulibaly v. Mukasey*, 541 F.3d 613, 620 (6th Cir. 2008) (internal quotation marks and citations omitted). And, under the law applicable here, the finding "must be based on issues that go to the heart of the applicant's claim." *Id.* (internal quotation marks and citations omitted). (The heart-of-the-claim standard was abrogated by the REAL ID Act of 2005, *see* 8 U.S.C. § 1158(b)(1)(B)(iii), but the subsection that did so applies only to claims for asylum made after May 11, 2005, which Khalil's was not. *See* Pub. L. No. 109-13, Div. B, 119 Stat. 302, 305 (2005).)

There was substantial evidence to support the IJ's adverse credibility determination here. First, Khalil asserted in his written applications that his difficulties with Hezbollah began in November 2002. At the hearing, however, he testified that they had actually begun in June 2002. This was no minor inconsistency. Khalil testified that he largely stayed at home from the time he was injured until leaving Lebanon in April 2003; his revised timeline meant he would have spent ten months at home, rather than five. So it was reasonable for the IJ to expect him to have been more precise. Khalil did attempt to explain himself by suggesting that he had trouble understanding dates in English and that he had been alerted to the mistake when he received a letter from his doctor, which recounted his hospital treatment and was dated August 5, 2002. But he never explained how the letter's August 5 date led him to conclude that his problems with Hezbollah started in June, so the explanation did little to rehabilitate his credibility.

-3-

The doctor's letter itself also posed a problem for Khalil. It stated that the doctor had repaired a torn nerve in Khalil's left arm and stitched a wound that was "about 2/3 of the size of the forearm." But the scar that Khalil showed to the IJ during his hearing was on his upper arm, not his forearm. And even if one might read the letter as referring only to the wound's size and not its location, Khalil's scar was too long, as it stretched from his shoulder to his elbow. The poor fit between the physical evidence and the medical record gave the IJ serious reason to doubt Khalil's story and the authenticity of the note offered in support of it.

Finally, Khalil's credibility was undermined by his failure to mention his fear of persecution when he first met with immigration officials, shortly after his arrest at the border. Whether or not an initial post-arrest interview can ever suffice on its own to discredit an applicant's testimony, *see Yu*, 364 F.3d at 703 n.4, an alien's total failure to mention his fear of returning home certainly provides some evidence for the IJ to consider. Notably, Khalil does not claim that there was any problem with the translator at his interview. Instead, he says he was tired and scared when he met with the immigration officials, and that he anticipated having another interview in which he could explain his fear of returning home. The IJ was not required to accept those explanations.

These problems with Khalil's case went straight to the heart of his claim that he had been beaten and tortured by Hezbollah before leaving Lebanon. The IJ cited other inconsistencies that were much more dubious. But given the ones we have discussed, we cannot say that "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). The IJ's adverse credibility determination is therefore one that we are required to accept.

Khalil separately argues that he received ineffective assistance of counsel at his hearing before the IJ. That argument was not presented to the BIA and is thus forfeited. *See* 8 U.S.C. § 1252(d)(1); *Ramani v. Ashcroft*, 378 F.3d 554, 559-60 (6th Cir. 2004). It is true that the same allegedly ineffective attorney represented Khalil both before the IJ and again in his appeal to the BIA, but even in those circumstances "[t]he proper avenue for raising ineffective assistance of counsel is by filing a motion to reopen proceedings with the BIA." *Sswajje v. Ashcroft*, 350 F.3d 528, 533 (6th Cir. 2003); *see also Dokic v. INS*, 899 F.2d 530, 531-32 (6th Cir. 1990). Having failed to do so, Khalil cannot now obtain judicial review of this claim.

We deny the portion of the petition for review that challenges the IJ's adverse credibility determination, and we dismiss the portion that raises a claim of ineffective assistance of counsel.