NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 04a0027n.06
Filed: October 13, 2004
No. 02-4279

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| SAMBA LAM, | ) | |
| | ) | |
| *Petitioner-Appellant,* | ) | |
| | ) | |
| v. | ) | On Appeal from the Board of |
| | ) | Immigration Appeals |
| JOHN ASHCROFT, | ) | |
| | ) | |
| *Respondent-Appellee.* | ) | |

**Before:** **BOGGS, Chief Judge; GUY, Circuit Judge; and STEEH, District Judge.**[*]

**PER CURIAM.** Samba Lam appeals from the Board of Immigration Appeals's denial of his application for asylum and associated relief. The Board of Immigration Appeals and the Immigration Judge had substantial evidence to support their determination that Lam was not a refugee. We affirm.

## I

Samba Lam is a citizen of Mauritania who entered the United States without any valid means of entry in 1997. The Immigration and Naturalization Service ("INS") sought removal. In response, Lam conceded removability but sought asylum under 8 U.S.C. § 1158 and withholding of removal

---

[*]The Honorable George Caram Steeh, United States District Court Judge for the Eastern District of Michigan, sitting by designation.

under 8 U.S.C. §1231(b)(3). Prior to his hearing before an Immigration Judge, Lam filed a supplemental application that also sought protection under the Convention Against Torture.

Lam primarily alleges that he was persecuted in Mauritania because of his race and ethnicity. He testified that, in 1989, he fled Nouakchott, Mauritania's capital, after discovering that his store was being destroyed during rioting by "White Moors," the Arab ethnic group that controls Mauritania's government. As he approached the village where his family lived, however, the military captured and imprisoned him for seven months. He claimed that he was tortured in prison and asked about an opposition political organization called FLAM, a group about which Lam had no knowledge. He stated that the soldiers subsequently forced him to labor at a military camp near his village. One night, he escaped by swimming the river to Senegal. He lived there for approximately seven years, working in someone's shop.

Lam appeared before an Immigration Judge with the assistance of counsel and an interpreter. Following a hearing, the Immigration Judge denied Lam any relief primarily because she did not find Lam credible. He timely appealed that decision to the Board of Immigration Appeals, which adopted and affirmed the Immigration Judge's ruling.

## II

The decision to grant asylum is a two-step inquiry. *Ouda v. INS*, 324 F.3d 445, 451 (6th Cir. 2003). The first step is whether the applicant qualifies as a refugee. Only if the petitioner qualifies as a refugee may the Attorney General choose to exercise his discretion and grant asylum. *Ibid.* In this case, the Immigration Judge and the Board of Immigration Appeals ended the inquiry at the first

step by determining that Lam did not qualify as a refugee. It is this determination that we now review on appeal. A refugee is an alien who is "unable or unwilling to return to . . . [his] country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). Under § 1101(a)(42)(A), an applicant has the burden of proving past persecution or a well-founded fear of future persecution. 8 C.F.R. § 208.13(a)-(b); *see also Yu v. Ashcroft*, 364 F.3d 700, 703 (6th Cir. 2004). Where, as here, the Board of Immigration Appeals adopts the decision of the Immigration Judge, we directly review the Immigration Judge's decision. *Denko v. INS*, 351 F.3d 717, 726 (6th Cir. 2003). We review that decision under the substantial evidence test. This court can reverse only if "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *see also Yu*, 364 F.3d at 703 n.2 (recognizing lingering confusion over the proper standard but "officially adopt[ing]" substantial evidence).[1]

The Immigration Judge primarily denied Lam refugee status because she did not think he was credible. We conclude that this determination was supported by substantial evidence. The

_____

[1]The Immigration Judge also ruled against Lam's claims for withholding of removal and protection under the Convention Against Torture. Lam does not raise any argument about the Convention Against Torture in his brief. The claim for relief under the Convention Against Torture is therefore waived. *United States v. Mick*, 263 F.3d 553, 567 (6th Cir. 2001); *see also Abati v. Ashcroft*, 101 Fed. Appx. 626, 627 (6th Cir. June 17, 2004) (unpublished opinion) (holding that Convention Against Torture claim is waived when it is absent from appellant's brief). The grounds for withholding of removal are the same as for asylum, except that instead of proving a "well-founded fear of persecution," 8 C.F.R. § 208.13(b), the applicant "must demonstrate a clear probability that he would be subject to persecution." *Mikhailevitch v. INS*, 146 F.3d 384, 391 (6th Cir. 1998). Lam then faces the same question, just with "a more stringent showing of truth." *Ibid.* Therefore, a determination that Lam is not eligible for asylum forecloses discussion of withholding of removal. *Ibid.*

Immigration Judge identified several inconsistencies that go to "the heart of [Lam's] asylum claim," specifically his persecution based on his race and ethnicity. *Yu*, 364 F.3d at 703 (citing *Valderrama v. INS*, 260 F.3d 1083, 1085 (9th Cir. 2001)). The inconsistencies most damaging to Lam's credibility concerned his nationality certificate. Lam had consistently testified that, after leaving Nouakchott, he arrived at his village with two forms of identification: his identity card and his nationality certificate. He claimed that the military asked for his identity card and then tore it up. In his asylum application, he further claimed that he was able to retain his nationality certificate by hiding it in his underwear. He testified at his hearing, however, that he kept his card in his pants pocket, which he then turned over to the military. He claimed at the hearing that the nationality certificate was still in his pants when his clothes were returned to him seven months later. Furthermore, the Immigration Judge found it implausible that the military would take his clothes and then not destroy his nationality certificate after they had torn up his identity card. *See Yu*, 364 F.3d at 703 (recognizing that implausibilities in a petitioner's statement can contribute to an adverse credibility finding). A second inconsistency concerned the condition of the nationality certificate. Lam testified that he swam across a river to Senegal with the nationality certificate in his pocket. When the Immigration Judge examined a copy of the nationality certificate, it in no way suggested that the original had been water-damaged. Each of these defects in Lam's account cast doubt on his account of persecution.

The Immigration Judge also noted an important omission about the period of time in which Lam was forced to do labor. In his asylum application, Lam described an incident at the camp in which, after he tried to talk to a woman he recognized, a guard elbowed him in the mouth and broke

his tooth. Lam never mentions this incident in his hearing testimony. Courts have diminished the significance of omissions when an applicant testifies at a hearing about something that is left out of his initial application because of the limited space available on the application forms. *Secaida-Rosales v. INS*, 331 F.3d 297, 308-09 (*quoting Aguilera-Cota v. INS* 914 F.2d 1375, 1382-83 (9th Cir. 1990)); *see also Ileana v. INS*, 2004 WL 1770569, at *2-3 (6th Cir. Aug. 5, 2004) (unpublished opinion). This case presents the opposite scenario. Instead of including information at the hearing that was not disclosed in his asylum application, Lam's significantly shorter application contains an incident that is entirely absent from his more detailed hearing testimony. That Lam omitted an act of persecution from his testimony indicates a lack of credibility.

The Immigration Judge found that Lam's failure to corroborate aspects of his story further diminished his credibility. Though "[t]he testimony of the applicant, if credible, may be sufficient to sustain the burden of proof without corroboration," 8 C.F.R. § 208.13(a), the Immigration Judge had already criticized Lam's credibility. Once credibility has already been challenged, failure to provide easily ascertainable corroborating evidence reinforces an adverse credibility determination. *See Chebchoub v. INS*, 257 F.3d 1038, 1044 (9th Cir. 2001); *see also Ba v. Ashcroft*, 101 Fed. Appx. 617, 619 (6th Cir. June 17, 2004) (unpublished opinion). Specifically, in this case the Immigration Judge did not understand why Lam failed to obtain a medical evaluation explaining the origin of the scars on his back. Having spent several years in the United States, Lam could easily have received such an evaluation, the results of which might have supported his account of torture during his imprisonment.

Though some of the other inconsistencies identified by the Immigration Judge may seem minor in comparison, the inconsistencies, implausibility, omission, and lack of corroboration discussed above demonstrate that the Immigration Judge's adverse credibility determination is supported by substantial evidence. It is clearly not true that "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

### III

Lam argues that the Immigration Judge failed to consider that he would be persecuted on the basis of an imputed political opinion. Specifically, Lam argues that the Mauritanian government will assume he is a member of FLAM and persecute him on that basis. The Immigration Judge did consider that possibility. *See* J.A. 78 ("I cannot find that the respondent has established that he is identified or could be identified with the group [FLAM] so as to be subjected to persecution in the future should be return . . . .") The only proof Lam offers on this point is testimonial evidence that he was questioned about FLAM while in prison. But he also testified that he denied all knowledge about the group and that his interrogators probably recognized he was not a member. *See* J.A. 108 ("they could not find anything out of me as far as belonging to that group . . . .") Though Lam provided a wealth of documentary evidence, none of it suggested that he was a member of FLAM or that individuals were being wrongly accused of membership in the organization. The Immigration Judge therefore had substantial evidence that the Mauritanian government would not associate him with FLAM were he to return.

Because we affirm the Immigration Judge's adverse credibility determination, we need not reach the issue of whether Lam had exhausted his administrative remedies on the issue of resettlement in Senegal. For these reasons, we AFFIRM the judgment of the Board of Immigration Appeals.