NOT RECOMMENDED FOR PUBLICATION
File Name: 05a0770n.06
Filed: September 1, 2005

No. 03-4323

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

BENJAMIN FRANK DOSA,

     Petitioner,

v.

ALBERTO GONZALES, ATTORNEY GENERAL,

     Respondent.

                    /

Petition for review of an order of the Board of Immigration Appeals.

BEFORE:    BOGGS, Chief Judge; RYAN and ROGERS, Circuit Judges.

     RYAN, Circuit Judge.     The petitioner, Benjamin Frank Dosa, seeks review of a final order of the Board of Immigration Appeals (BIA) affirming the Immigration Judge's (IJ) denial of Dosa's claims for asylum, withholding of removal under the Immigration and Nationality Act, and withholding under the United Nations Convention Against Torture. The IJ found Dosa to be an "inherently incredible person," denied his application, and ordered him removed. For the reasons set forth below, we deny Dosa's petition for review.

**I.**

     Dosa claims to be a college educated political activist from Togo, an African nation ruled by the dictator Eyadema, from 1967 until his death in February 2005. Dosa claims he was a member of the political party, Union Forces for Change (UFC), and that his

political activities in support of democracy resulted in his imprisonment by the government and severe beatings on two separate occasions.

Dosa testified that he was arrested in Togo on May 20, 1994, after giving a speech on behalf of the UFC. He says that while imprisoned for ten days he was beaten and tortured and upon release was forced to sign a document pledging to discontinue his involvement with the UFC. Dosa claims that while he was acting as an election observer for the UFC on June 21, 1998, Eyadema's officers stormed the polling place where he was working and replaced legitimate ballots with fraudulent ones. Before Dosa could report the incident, he was imprisoned, beaten, and told he was going to die. He testified that with the help of some UFC party members, who bribed a sympathetic army colonel, he escaped on July 2, 1998. Dosa says he fled Togo, flew from Benin to Canada via Brussels, and was smuggled into the United States at Buffalo, New York.

Dosa applied for asylum on October 18, 1998, claiming he would be persecuted if he returned to Togo. His application was denied. He was then placed in removal proceedings, where he conceded removability and applied for asylum, withholding of removal, and voluntary departure. Dosa later submitted a supplemental application, and on April 11, 2002, following a merits hearing, the IJ found Dosa's story unbelievable, and denied his application.

Dosa filed a timely appeal with the BIA, which affirmed the IJ's decision without opinion. Dosa then filed a pro se petition for review and a motion for stay of removal with this court. A stay was granted on December 4, 2003.

**II.**

When the BIA affirms without opinion, we review the IJ's decision as the final administrative order. Yu v. Ashcroft, 364 F.3d 700, 702 (6th Cir. 2004). When an IJ makes a credibility determination adverse to a petitioner, we review that determination for "substantial evidence," id., reversing only if "any reasonable adjudicator would be compelled to conclude to the contrary," 8 U.S.C. § 1252(b)(4)(B). Under this highly deferential standard of review, we have rarely disturbed an IJ's denial of asylum based upon a finding that the petitioner's testimony is unworthy of belief, particularly when his or her credibility goes to the heart of the claim. Sylla v. INS, 388 F.3d 924, 926 (6th Cir. 2004).

Dosa contends that the IJ's adverse credibility finding was not substantiated, in that the IJ focused on immaterial, minor discrepancies between Dosa's testimony and the information he provided in his application for asylum. Therefore, Dosa argues, the IJ's adverse credibility determination does not go to the heart of his claim. We do not agree.

The IJ identified several inconsistencies between Dosa's testimony and his application papers, two of which the IJ highlighted. The IJ found, first, that Dosa's testimony regarding the names and number of persons arrested with him in 1994 was inconsistent with the information supplied in his application for asylum. The application listed the names of three persons. When Dosa testified, he named three individuals, one of whom was a person not named in the application. According to the IJ, it was only in response to leading questions from Dosa's counsel that he supplied the correct name of the third person listed on the application. The IJ immediately brought this inconsistency to Dosa's attention and asked why Dosa's counsel had to provide Dosa with the correct name. Dosa failed to reconcile the inconsistency and offered only that the stress of testifying

caused the miscue.   The IJ found that Dosa's failure to adequately explain this inconsistency, taken together with the importance to his claim of the details of his arrest and imprisonment, was an important indication that Dosa's testimony was not credible.  We cannot say that this conclusion by the IJ was based upon a minor or immaterial matter, or that any reasonable adjudicator would be compelled to find Dosa credible.  See Singh v. Ashcroft, 398 F.3d 396, 402-03 (6th Cir. 2005).

The IJ also noted that Dosa testified that an army colonel had allegedly been bribed so that Dosa could escape from prison in 1998, but that this rather dramatic fact was not mentioned in Dosa's application papers.  The IJ concluded that if an army colonel had actually been bribed and the bribery was critical to Dosa's escape, as Dosa said it was, he surely would have mentioned it in his application papers.  The IJ found that Dosa's testimony regarding the army colonel was fabricated.

The IJ was justified in finding that the inconsistency between Dosa's application papers and his testimony concerning the alleged bribery as critical to the alleged escape, was material to Dosa's story and warranted the finding that Dosa's testimony was not credible.

Although some of the inconsistencies between Dosa's testimony and the information provided or not provided in his application papers are minor, there are also several inconsistencies, in addition to the two material inconsistencies that we have discussed. They are thoroughly discussed in the IJ's detailed and well organized bench opinion, and we need not repeat them here.   The point is that the cumulative effect of the many inconsistencies in Dosa's story strongly supports the IJ's determination that Dosa's testimony, taken as a whole, was unworthy of belief.  See Yu, 364 F.3d at 703-04.

The IJ also found that Dosa failed to corroborate his decidedly dubious story of imprisonment, torture, and escape with documentary evidence that was available to him or with the testimony of those including some of his relatives who were available to testify and who would have had personal knowledge of many parts of Dosa's story. The IJ explained that after watching Dosa testify and listening carefully to his uncorroborated story, and taking into account the several inconsistencies between Dosa's application papers and his testimony and within the testimony, he concluded that Dosa concocted much of the story he related under oath. The IJ found Dosa to be "an inherently incredible person."

We are in no position to secondguess the IJ's fully explicated finding that Dosa's testimony was unworthy of belief, and we, therefore, decline to disturb it. The record provides substantial evidence to support the IJ's finding that Dosa was "an inherently incredible person."

Finally, Dosa's assertion that the BIA improperly applied its summary affirmance without opinion procedure in this case is without merit. Denko v. INS, 351 F.3d 717, 731-32 (6th Cir. 2003).

**III.**

For the aforementioned reasons, the petition is **DENIED**.

**BOGGS, Chief Judge, dissenting**. I dissent because I do not believe that the IJ's adverse credibility determination was supported by substantial evidence.

The IJ stated that he "believes that if what [Dosa] said were true, the court would probably grant his asylum application," but concluded that Dosa was "an inherently incredible person" who had failed to demonstrate "that he is from Togo, let alone that he is a member of the UFC or has done anything for the party." In other words, the IJ's position was that while Dosa presented a portrait of someone who qualified for asylum, he failed to demonstrate that his own life overlapped with that portrait even to the extent of being a native of Togo. I believe that, on the basis of the evidence cited by the IJ, and the reasons given for his decision, any reasonable adjudicator would be compelled to the contrary.

When, as in this case, the IJ's decision rests entirely on an adverse credibility determination, we must "defer to the IJ on credibility questions," but "that deference is expressly conditioned on support in the record, as evidenced by specific findings" *El Moraghy v. Ashcroft*, 331 F.3d 195, 205 (1st Cir. 2003). "[D]eference is not due where findings and conclusions are based on inferences or presumptions that are not reasonably grounded in the record." *Id.* at 202 (citing *Cordero-Trejo v. INS*, 40 F.3d 482, 487 (1st Cir. 1994)); *see also Dia v. Ashcroft*, 353 F.3d 228, 249 (3d Cir. 2003) ("it is clear that 'adverse credibility determinations based on speculation or conjecture, rather than on evidence in the record, are reversible'") (citing *Chen Yun Gao v. Ashcroft*, 299 F.3d 266, 272 (3d Cir. 2002)).

During oral argument, we asked counsel for the United States to list the most significant inconsistencies within Dosa's testimony or between his testimony and asylum

application. Counsel could point to only two major problems: the inconsistencies described by the court regarding Dosa's 1994 arrest and his escape from prison. *See* Slip Op. at 3-4. Only when pressed repeatedly to name a third significant problem with Dosa's application did counsel suggest Dosa's failure to mention his fluency in English and French on an earlier asylum application, prepared by a now-disbarred attorney.

The government's difficulty in pointing us to a genuine inconsistency in Dosa's testimony in addition to those concerning his arrest and escape is unsurprising. Of the other inconsistencies the IJ identified in Dosa's testimony, some were illusory,[1] or inconsistent only in light of speculation or questionable assumptions on the IJ's part,[2] others were extremely trivial,[3] and still others were simply the result of misunderstandings between

---

[1]For example, the IJ faulted Dosa for first testifying that he was incarcerated until June 2, and then changing his testimony to June 1, to conform to the date given in his 2000 Application. In fact, Dosa testified that he was released from prison on June 1, and arrived home on June 2. (J.A. 84.) The IJ also found Dosa's credibility to be undermined by the fact that Dosa testified that he, while having been Catholic originally, was now a Protestant, but his mother, who remained Catholic, referred in a letter to "our church." Needless to say, this is not a contradiction; there are any number of reasons why a Catholic might refer to "our church" in a letter to her apostate son. The IJ also questioned the authenticity of this letter from Dosa's mother because it failed to mention an event that the IJ had previously declared to have never happened.

[2]For example, the IJ questioned the authenticity of a UFC membership card Dosa claimed had been torn up by a guard while he was in prison, on the grounds that Dosa's claim that he had been able to retrieve the pieces of the card "makes little sense," and that, despite Dosa's testimony that although he, and many others, had been members of the UFC since 1990, the party only began formalizing memberships and assessing dues in 1996, Dosa's claim to have been a member since 1990 was contradicted by the notation on the card that Dosa had been a member since 1996.

[3]For example, during Dosa's testmony at the hearing, he spelled the name of the person with whom he was arrested as KOMLAVI. On his asylum application that name is spelled KOMLANVI. The IJ acknowledged that this "could be explained as a scrivener's error," but stated that it nonetheless "raises a red flag."

Dosa and the IJ,[4] who frequently expressed exasperation at his inability to understand Dosa, and at one point pondered the use of an interpreter. Of the few inconsistencies cited by the IJ that are evident in the record, only two, those concerning Dosa's arrest and escape from Togo, are relevant to his claim to have been persecuted. Neither Dosa's failure to list all the languages he spoke, nor some other apparent discrepancies found by the IJ in Dosa's account of his schooling and employment history have any bearing on Dosa's persecution claim, and therefore may not be deemed to undermine his credibility. *See Daneshvar v. Ashcroft*, 355 F.3d 615, 623 (6th Cir. 2004) ("If discrepancies 'cannot be viewed as attempts by the applicant to enhance his claims of persecution, they have no bearing on credibility.'") (quoting *Shah v. INS*, 220 F.3d 1062, 1068 (9th Cir. 2000)); *see also Yu v. Ashcroft*, 364 F.3d 700, 704 (6th Cir. 2004) ("minor inconsistencies 'in dates which reveal nothing about an asylum applicant's fear for his safety' [are] an inadequate basis for the adverse credibility finding") (quoting *Senathirajah v. INS*, 157 F.3d 210, 221 (3d Cir. 1998)). In my view, the IJ's finding that Dosa's testimony was inconsistent with his

---

[4]The following exchange is typical of the dialog between Dosa and the IJ:
> [JUDGE TO MR. DOSA]
> . . . .
> A. This fourth picture should be - - yeah, that should be the meeting place in my house, next to my house. Because the house is next to mine with my office.
> . . . .
> Q. So this is what?
> . . . .
> A. The meeting place, yeah.
> Q. The meeting place. So when you said earlier it was your house, that's wrong?

(J.A. 117: 4-15.)

asylum application stands or falls with his determination that Dosa testified inconsistently with regard to his arrest and escape from Togo.

As the court notes, *see* Slip Op. at 3, the IJ found that Dosa's testimony about his 1994 arrest was initially inconsistent with his asylum application, and that he only corrected himself after being prompted to do so by leading questions from his attorney. Neither finding is justified by the record. On his asylum application, Dosa stated that he was arrested along with three other men: Felix Yomenu, Innocent Agboke, and Jean Dossouvi. At the hearing he described a meeting that was broken up by police, and testified as follows:

> They started beating up, and people running, and then they seized me and Felix - -

JUDGE TO MR. DOSA

> Q. I'm sorry. Seized you and who?
>
> A. Felix Yomenu.

. . . .

> Q. Who else?
>
> A. They seized me and Felix Yomenu, and Innocent Agboke also.

. . . .

> Q. Okay. Who else?
>
> A. Syprain.
>
> Q. Okay. Anybody else arrested?
>
> A. No, there were three arrested.

MR. NAMEI TO MR. DOSA

Q. Okay, so it was Felix, Innocent, and Syprain - -

A. Dossouvi also.

JUDGE TO MR. DOSA

Oh so there were four of you?

A. Yes.

Q. Give me the name of the fourth person.

A. JEAN Dossouvi.

. . . .

Q. So there were four of you arrested?

A. Yes.

Q. I'm sorry, five of you.  One, two, three, four, five.

A. Jean Dossouvi, Felix Yomenu, me, and - -

Q. Innocent and Syprain.

A. Syprain was not arrested.  Syprain was at the meeting.

Q. But he was arrested, right?

A. No, he wasn't arrested.

Q. Well, why did you just tell me he was arrested?

A.  Syprain was not arrested because he was also a member of (indiscernible) to go and teach.

(J.A. 80-82.)  While there was clearly some confusion between Dosa and the IJ about who had been seized and who had been arrested, there is no inconsistency between Dosa's testimony and his application.  His final answer to the judge was that the same three men

he had listed on his asylum application, Dossouvi, Yomenu, and Agboke, were arrested with him. Dosa first referred to Syprain while he was describing who was seized by the police at the meeting. The IJ then began describing those seizures as arrests, and only when Dosa realized that the IJ was asking who had actually been arrested and taken into custody, did he clarify matters, and add the name of Dosouvi. It is entirely possible, and consistent with Dosa's testimony, that Syprain was seized by the police along with the others, but then released while the other four men were taken into custody.

The IJ, however, was convinced that Dosa had told him that Syprain was arrested, and that Dosa's attorney had prompted Dosa to change his story by asking leading questions:

> Q. So all five of you were arrested.
>
> A. Four. Syprain was not arrested.
>
> Q. Why did you tell me he was?
>
> A. Sorry, I wasn't - -
>
> Q. You did tell me he was arrested, right?
>
> A. I'm sorry, I'm sorry.
>
> Q. Did you say that or not?
>
> A. I'm sorry.
>
> Q. Did you say that?
>
> A. I was mistaken about this.
>
> Q. Why did you come up with the wrong name then? Why did he have to tell you who the other person was?
>
> A. Jean Doussovi. That was my fault.

> Q. Why did he have to tell you Jean Doussouvi's name? Why couldn't you remember that on your own?
>
> A. I'm sorry. I'm under stress.
>
> Q. You're under stress. Okay, okay.

(J.A. 82.) The IJ took this exchange as an admission that Dosa had stated that Syprain was arrested and then changed his story. In fact, Dosa admitted no such thing. And, as the extracts from the transcript quoted above make clear, Dosa's attorney did not mention Jean Doussouvi's name. The "leading question" that elicited that name from Dosa was "[o]kay, so it was Felix, Innocent, and Syprain - -" I do not believe that any reasonable adjudicator could find on the basis of this exchange that Dosa testified inconsistently about his 1994 arrest in a way that undermined his credibility.

With regard to his escape from Togo, Dosa testified that members of the UFC arranged for his escape with the help of an army colonel. According to Dosa, "people from our party went to see him . . . and they tell him that, you know, they need me out of there because many people have already lost their lives." (J.A. 99.) Dosa was then asked whether the colonel was bribed, and he answered that he had been bribed. (J.A. 100.) The IJ found that this account of Dosa's arrest was inconsistent with his asylum application, on which Dosa stated that he was able to escape "with the help of a few military men who secretly opposed [sic] the regime." The IJ questioned why Dosa did not mention the bribery in his application, and stated that "[i]f that truly happened, the Court believes it probably would have been in the application supplement."

The most obvious question raised by the IJ's statement is why one would believe that this incident would have been mentioned in the application when Dosa did not even think to mention it during his testimony until he was asked directly. Perhaps Dosa viewed the bribery of even sympathetic colonels as something one takes for granted as a prison escapee in Togo. Perhaps he was worried about declaring on a government form that he had been involved in bribing an official. We will never know. I do not believe, however, that the IJ's inferences that the bribery never took place, and that Dosa's credibility was undermined by his claim that it did, were so self-evident that the IJ was warranted in relying on them without any explanation. *See Lam v. Ashcroft*, 112 F. App'x 477, 479 (6th Cir. 2004) (unpublished) ("Courts have diminished the significance of omissions when an applicant testifies at a hearing about something that is left out of his initial application because of the limited space available on the application forms.") (citing *Secaida-Rosales v. INS*, 331 F.3d 297, 308-09 (2d Cir. 2003)); *Secaida-Rosales*, 331 F.3d at 308 ("If minor inconsistencies or misrepresentations of unimportant facts cannot constitute the basis for an adverse credibility finding, a fortiori minor omissions cannot."); *see also Hartooni v. INS*, 21 F.3d 336, 342 (9th Cir. 1994) (IJ must offer a "specific, cogent reason for any stated disbelief.").

This leaves Dosa's failure to provide adequate corroboration for his application as the only possible basis for the IJ's finding that he lacked credibility. *See* Slip Op. at 4-5.

Dosa submitted the following documents as evidence in support of his application: a copy of a letter from his mother; a copy of a letter from Simon Sanci (a UFC official); a copy of his UFC party membership card; and a copy of an undated summons, provided by Sanci, purportedly sent to Dosa by the Togolese government after he escaped to the

United States.  The IJ refused to credit any of these documents, because they were uncertified copies, and were not accompanied by certified translations from the original French.  The IJ also refused to allow Dosa present an acquaintance from Togo, now residing in the United States, as a witness, because Dosa gave less than the required fourteen days of notice of his intent to call that witness, and because of problems with the witness's identification, namely a mark on a "work authorization card" that made the first two letters of his name illegible, and slight differences between the names on two other forms of identification.  (*See* J.A. 165-66.)  This left Dosa without any corroborating evidence.

The failure of an alien to produce corroborating evidence may be fatal to a claim for asylum only if it would have been reasonable for the IJ to expect that evidence to be produced, and the applicant cannot plausibly explain his failure to produce it.  *See Dorosh v. Ashcroft*,  398 F.3d 379, 382 (6th Cir. 2004) (upholding BIA rule that the failure to provide corroborating evidence it is "reasonable to expect" may be regarded as evidence that an applicant has failed to meet her burden of proof); *see also Perkovic v. INS*, 33 F.3d 615, 621 (6th Cir. 1994) ("an alien is not required to produce evidence of persecution; the alien's own testimony can be sufficient to support an application for asylum, where the testimony is believable, consistent, and sufficiently detailed to provide a plausible and coherent account of the basis for his fear.") (internal citation omitted); 8 C.F.R. § 208.13(a) ("testimony of the applicant, if credible, may be sufficient to sustain the burden of proof without corroboration.").

This rule is subject to two limitations.  First, the evidence it is "reasonable to expect" must be "easily available" to the applicant.  *See Sidha v. INS*, 220 F.3d 1085, 1091 (9th Cir.

2000); *see also Dorosh* at 382-83 ("supporting documentation must be provided only if it is of the type that would normally be created or available in the particular country and is accessible to the alien, such as through friends, relatives, or co-workers.") (internal quotation and citation omitted).   Second, even the failure to produce easily available evidence cannot be held against an applicant unless he was given the opportunity to explain at the asylum hearing why that evidence was not produced.  *See Sidha*, 220 F.3d at 1091 & n.3 ("The petitioner must be given an opportunity at his IJ hearing to explain his failure to produce material corroborating evidence. . . . In this case Petitioner was specifically asked to explain the lack of corroboration and presented an explanation that both the IJ and BIA explicitly found incredible."); *see also Arulampalam v. Ashcroft*, 353 F.3d 679, 688 (9th Cir. 2003) (reversing adverse credibility determination, and rejecting government argument that asylum applicant had failed to credibly explain absence of corroborating evidence, because "Arulampalam was not 'given an opportunity at his IJ hearing to explain his failure to produce material corroborating evidence.'") (citing *Sidha*).

The IJ identified five potential sources of corroborating evidence that Dosa did not provide: (1) Dosa did not provide letters or a statement from his brother and sisters in Nigeria; (2) Dosa did not call as witnesses his three uncles living in the United States; (3) Dosa did not provide statements from other friends in the United States; (4) Dosa did not obtain a statement from his mother testifying to a grenade attack on Dosa's house after he escaped to the United States; and (5) Dosa only submitted one letter from his mother and one from Sanci, and did not submit others that he received from both individuals.

Of these five potential sources of evidence, Dosa was asked to explain only three: not calling his uncles to testify, not providing more letters from his mother and Sanci, and

not getting a statement from his mother about the grenade attack.  He was never asked why he did not provide a statements from his brother, sisters, or friends in the United States (one of whom he attempted unsuccessfully to call as a witness), and therefore cannot be said to have failed to explain the absence of those statements.

Dosa explained that he did not ask his uncles to testify on his behalf because he was no longer on good terms with them since they each married.  He explained that he threw away his other letters from Sanci after reading them, and that he did not submit other letters from his mother because they did not discuss anything relevant to his application.  Finally, he explained that he did not get a statement from his mother about the grenade attack because he did not know he needed to do so.  The IJ rejected each of these explanations without explanation, declaring simply that "no reasonable explanation" had been given.  This is not an acceptable basis for the denial of an otherwise meritorious asylum claim.  Our review of an IJ's decisions requires that we assess whether a reasonable adjudicator could agree with the IJ's conclusions; an assessment that is impossible when an IJ fails to explain the basis for his findings.  *See See Secaida-Rosales v. INS*, 331 F.3d 297, 307 (2d Cir. 2003) ("When an IJ rejects an applicant's testimony, the IJ must provide 'specific, cogent' reasons for doing so.") (citing *Aguilera-Cota v. INS*, 914 F.2d 1375, 1381 (9th Cir. 1990)); *Mersinaj v. Ashcroft*, 107 F. App'x 553, 555 (6th Cir. 2002) (unpublished) ("A credibility finding supported by specific, cogent reasons will be upheld.").  Although the IJ was not obliged to accept Dosa's explanations, he was obliged to spell out his reasons for rejecting them.  He did not, and we therefore lack any basis for concluding that his decision was supported by substantial evidence.

Never having met or questioned Mr. Dosa, I cannot say affirmatively that he is a credible witness to the events he claims took place in Togo. Nor can I say that a reasonable adjudicator could not set forth the type of cogent reasons lacking in the IJ's opinion for disbelieving certain aspects of Dosa's testimony. Indeed, it may be true that if the IJ had reached a more measured conclusion in this case, more clearly tied to the evidence in the record, I would have joined the court in affirming the BIA's decision. I do not believe, however, that any reasonable adjudicator could, on the basis of the evidence cited by the IJ, reach the hyperbolic conclusion that Dosa was "an inherently incredible person" who had failed to demonstrate "that he is from Togo, let alone that he is a member of the UFC or has done anything for the party." I would remand this case to the BIA for reconsideration or a new hearing.

For these reasons, I respectfully dissent.