**[DO NOT PUBLISH]**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 18, 2005
THOMAS K. KAHN
CLERK

----------------------------------------

**No. 04-14066
Non-Argument Calendar**

----------------------------------------

BIA Nos. A79-508-419 & A79-508-420

CARLOS HUMBERTO ARIAS,
MARIA PATRICIA LIBREROS,
et al.,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

----------------------------------------------------------------

**Petition for Review of an Order of the
Board of Immigration Appeals**

----------------------------------------------------------------

**(November 18, 2005)**

**Before EDMONDSON, Chief Judge, ANDERSON and BARKETT, Circuit Judges.**

PER CURIAM:

Petitioners Carlos Humberto Arias ("Carlos"), his wife, Maria Patricia Libreros ("Maria"), and their children, Carlos Humberto Arias-Libreros ("Carlos Jr.") and Paula Andrea Arias ("Paula"), natives and citizens of Colombia, petition for review of the final order of the Board of Immigration Appeals (BIA), which affirmed the immigration judge's denial of asylum and withholding of removal. Removal proceedings commenced after 1 April 1997; the permanent provisions of the Immigration and Nationality Act, as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, 110 Stat. 3009 (1996), govern this petition. We deny the petition.

Petitioners argue that they established past persecution and a well-founded fear of future persecution on account of Carlos's membership in the Colombian Conservative Party. Petitioners point to Carlos's June 2000 alleged kidnaping by members of the Revolutionary Armed Forces of Colombia (FARC), a telephone conversation Carlos had in August 2000 with a FARC commander, an instance two weeks later where Carlos was car-jacked, and a subsequent phone call informing Carlos that he could retrieve his car from a guerilla-controlled region. Petitioners also mention a June 2002 incident where their oldest daughter, Lina

2

Marcel Arias-Libreros, was "run down by armed men riding a motorcycle."[1]

Petitioners argue that Carlos established that his assailants may have had "mixed motives" for persecuting him, namely, threatening him on account of his political beliefs while stealing his car. Petitioners also challenge the IJ's adverse credibility determination as based on minor irregularities between Carlos's testimony and the asylum application.

The BIA here adopted the IJ's decision and made its own observations: we review the IJ's decision as well as the decision of the BIA. Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). We review factual determinations under the "substantial evidence" test: we must affirm the decision "if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." Id. at 1283-84 (citation omitted). We may not reverse the IJ's fact findings unless "the record not only supports reversal, but compels it." Mendoza v. U.S. Attorney Gen., 327 F.3d 1283, 1287 (11th Cir. 2003). We also review the IJ's credibility determinations under the "substantial evidence" test. D-Muhumed v. U.S. Attorney Gen., 388 F.3d 814, 818 (11th Cir. 2004). And on credibility determinations, we may not substitute our judgment for that of the IJ. Id.

---

[1]The incident with Lina occurred after Carlos and Maria were in the United States seeking asylum. Lina had remained in Colombia to pursue her studies.

3

An alien may obtain asylum if he is a "refugee": a person unwilling to return to his country of nationality "because of persecution or a well-founded fear of persecution on account of," among other things, political opinion. 8 U.S.C. §§ 1101(a)(42)(A), 1158(a)(1), (b)(1). The asylum applicant bears the burden of proving statutory "refugee" status with specific and credible evidence. Al Najjar, 257 F.3d at 1284, 1287.

Susbtantial evidence supports the determination that Petitioners failed to show that they suffered past persecution or had a well-founded fear of persecution on account of Carlos's purported membership in the Conservative Party. First, substantial evidence supports the IJ's decision that Carlos's testimony on his alleged persecution lacked credibility.[2] Many inconsistencies existed between Carlos's testimony and his asylum application, in particular about the time line of the trips that he and his family made to the United States.

Carlos testified that he came to the United States in June 1999 for vacation, but he indicated in the notice to appear that he was admitted for business. Carlos stated that Maria, who owned a business in Zarzal, Colombia, had left Colombia in January 1999 because she was being threatened by other business owners. But Maria was admitted to the United States as a visitor for pleasure; and Carlos did

---

[2]The other family members did not testify at the hearing.

not mention Maria's problems in his asylum application. Carlos testified that, during his five-month stay in the United States beginning in June 1999, he and his wife decided to escape the "dangerous situation" in Colombia. But Maria stayed in the United States after her visa expired on 29 July 1999, long before Carlos's alleged troubles with FARC began on 10 June 2000.[3] Similarly, Carlos testified that Carlos Jr. and Paula did not intend to remain in the United States when admitted in November 1999, but that, due to Carlos's troubles with the guerillas and the violence in Colombia, Carlos and Maria decided to keep the children in the United States after their visas expired. The children, however, overstayed their visa even before Carlos's problems with FARC began on 10 June 2000.

Moreover, despite Carlos and Maria's concern over the general violence in Colombia, Carlos's children remained until November 1999 in Colombia with Maria's mother in Zarzal, the site of Maria's business problems that purportedly caused her to leave the country. And despite concerns over conditions in Colombia and the threats to his wife, Carlos returned to Colombia after his 1999 visit to the United States.

---

[3]The IJ also questioned Carlos on why his wife took out a lease on an apartment in Miami in 1999 if, as Carlos testified, they originally were going to be in the United States only temporarily for a vacation.

The IJ also pointed to inconsistencies about Carlos's university studies, his address in Cali, Colombia, the dates and circumstances of his employment in Colombia, and the date when he began living at his current Florida residence. Further, the record is inconsistent about who was present with Lina when she allegedly was run down by armed motorcyclists in June 2002: Carlos testified that her aunt was with her during the attack, but Lina's statement indicated that her uncle was with her. And during the asylum hearing, Maria was in the courtroom but was asked to leave after making several gestures and responses under her breath while Carlos was cross-examined. The cumulative effect of the minor and major inconsistencies between Carlos's testimony and Petitioners' asylum applications are such that substantial evidence supports the IJ's reservations about Carlos's credibility. See Yu v. Ashcroft, 364 F.3d 700, 703-04 (6th Cir. 2004) (opining that "cumulative effect" of three major and a few minor inconsistencies constituted substantial evidence to affirm adverse credibility determination).

And as the IJ determined, the supporting documents Carlos submitted are unreliable. See Forgue v. U.S. Attorney Gen., 401 F.3d 1282, 1287 (11th Cir. 2005) (stating that, where IJ makes adverse credibility determination, IJ also must consider other evidence produced by asylum applicant). Carlos failed to include Lina in his initial asylum application: Lina's undated, unsigned, and unsworn

6

statement about the June 2002 attack only was submitted in a later supplement. Carlos provided only a vague explanation on (1) why he obtained a letter in April 1999 from a community activist, Luis Fernando Villalobos, stating that Carlos was a community leader involved in the "political movement" of Carlos Holguin Sardi, but (2) why Carlos did not have this letter notarized until February 2002. Other letters from acquaintances of Petitioners contained only vague and general references to Carlos's political activity and his alleged troubles with the guerrillas. And Carlos did not submit a statement from the Conservative Party leader to whom Carlos allegedly reported the June and August 2000 incidents.

Substantial evidence supports the determination that Petitioners did not prove -- with specific and credible evidence -- that they were persecuted on the basis of Carlos's membership in the Colombian Conservative Party. See Al Najjar, 257 F.3d at 1287. In other words, the evidence does not compel us to reverse the IJ's determination that the facts that Carlos presented were "designed to provide grounds for the asylum claim." Consequently, we uphold the IJ's and the BIA's determination that Petitioners were not entitled to asylum.[4]

**PETITION DENIED.**

---

[4]Because Petitioners have failed to establish a claim of asylum on the merits, they necessarily fail to establish eligibility for withholding of removal. See Forgue, 401 F.3d at 1288 n.4.

7