**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 11a0748n.06

No. 10-3296

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| DEMECIO CRISTOBAL, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **ON PETITION FOR REVIEW FROM** |
| | ) | **THE BOARD OF IMMIGRATION** |
| ERIC H. HOLDER, JR., ATTORNEY | ) | **APPEALS** |
| GENERAL, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |
| | ) | |

**FILED**

*Nov 03, 2011*

LEONARD GREEN, Clerk

BEFORE:    MARTIN, CLAY, and WHITE, Circuit Judges.

**HELENE N. WHITE, Circuit Judge.** Demecio Cristobal, a native and citizen of Guatemala, seeks review of the final order of the Board of Immigration Appeals (BIA) affirming the Immigration Judge's (IJ) denial of his petition for asylum, withholding of removal, and protection under the Convention Against Torture (CAT). We **DENY** the petition for review.

I.

Cristobal entered the United States on October 22, 1994, and filed his asylum application in December 1994. The former Immigration and Naturalization Service commenced removal proceedings against Cristobal under section 212(a)(6)(A)(i) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1182(a)(6)(A)(i), as an alien present in the United States without being admitted

or paroled, and served Cristobal with a Notice to Appear on April 28, 2000. Cristobal completed a second application for asylum in August 2000.

On June 12, 2008, an IJ held a hearing on Cristobal's asylum and related claims. Cristobal testified that beginning in 1980, he was forced to serve as an unpaid member of the Civil Patrol as part of Guatemala's war against leftist guerilla organizations. Cristobal's primary duty was to serve as a lookout in his home town of Huehuetenango; he did not claim he engaged in armed conflict with guerrillas as part of his service.

In July 1991, Cristobal had a family reunion at his house. During that reunion, twenty armed members of a guerrilla group arrived and demanded to know why Cristobal and his family were helping the army rather than fighting with the guerrillas. The guerillas told Cristobal that things had to change and threatened to come back and take Cristobal and his family by force. The guerrillas left when they heard dogs barking, and Cristobal and his family were not physically harmed.

Not long after that incident, Cristobal moved his family to the capital city, where he lived for four years before leaving for the United States. Cristobal did not find his stay in Guatemala City peaceful because of its many problems, including a high murder rate. He testified he was afraid to return to Guatemala because "there's no peace. There's always problems there." He said he heard cases of people who returned and who were killed, and that the people who took the side of the guerrillas would recognize members of the Civil Patrol and create problems for them. Cristobal did not testify that he faced any specific incidents during his stay in Guatemala City.

The IJ found that Cristobal's account of the single incident at his family reunion did not establish past persecution. Additionally, because Cristobal was able to avoid problems with the

guerrillas by moving to the capital, the IJ found he had not shown that his fear of the guerrillas existed country-wide. The IJ further found that Cristobal's "fear of harm because of his prior civil patrol membership is now too remote to support a well-founded fear of persecution," particularly because his role in the Civil Patrol "was not so significant, that he would now be recognized as a person who had opposed the guerillas, particularly in areas other than his hometown." The IJ therefore denied Cristobal's application for asylum and related relief and ordered his removal to Guatemala.

On June 25, 2008, Cristobal timely appealed the IJ's decision to the Board of Immigration Appeals. On February 17, 2010, the BIA agreed with the IJ's conclusions that Cristobal had not established past persecution or a well-founded fear of future persecution and dismissed Cristobal's appeal. In finding that Cristobal had failed to establish past persecution, the BIA reiterated that in the sole encounter Cristobal had with guerrilla forces, "no one was harmed, and the guerrillas left because they heard dogs barking." The BIA added that Cristobal lived in Guatemala City "for four years without incident" before coming to the United States. In rejecting Cristobal's claim of a well-founded fear of future persecution, the BIA concluded that the news accounts submitted by Cristobal did not establish a well-founded fear because they related to general country conditions and contained scant evidence that former Civil Patrol members have been subjected to mistreatment by former guerrillas.

On March 16, 2010, Cristobal timely filed a petition for review of the BIA's order dismissing Cristobal's appeal.

II.

The IJ, acting for the Attorney General, has discretion to grant asylum to any alien who qualifies as a "refugee." *Yu v. Ashcroft*, 364 F.3d 700, 702 (6th Cir. 2004) (citing 8 U.S.C. § 1158(b)). A refugee is an alien who is unable or unwilling to return to his home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A).

Cristobal argues that the BIA erred in finding that he failed to establish past persecution or a well-founded fear of future persecution. This Court "review[s] administrative findings of fact, such as whether an alien qualifies as a refugee, under the substantial evidence standard." *Singh v. Ashcroft*, 398 F.3d 396, 400 (6th Cir. 2005). "Such findings are 'conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.'" *Id.* (citing *Yu*, 364 F.3d at 702). Where the BIA adopts the IJ's reasoning, this Court reviews those aspects of the IJ's decision directly. *Id.* at 401.

A. Past Persecution

Persecution is "the infliction of harm or suffering by the government, or persons a government is unwilling or unable to control, to overcome a characteristic of the victim." *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009) (quoting *Pilica v. Ashcroft*, 388 F.3d 941, 950 (6th Cir. 2004)) (internal quotation marks omitted). Persecution "requires more than a few isolated incidents of verbal harassment or intimidation, unaccompanied by any physical punishment, infliction of harm, or significant deprivation of liberty." *Japarkulova v. Holder*, 615 F.3d 696, 699 (6th Cir. 2010) (quoting *Mikhailevitch v. INS*, 146 F.3d 384, 390 (6th Cir. 1998)) (finding that a threat by a

-4-

government minister to arrange a fatal "accident" if the applicant did not abandon efforts to expose government corruption did not amount to persecution standing alone, particularly where the applicant stayed in her country for several more years without suffering any physical mistreatment). Although "physical abuse is not an absolute prerequisite to a finding of persecution," *id.* at 700, threats by themselves will only amount to persecution in exceptional cases. *Id.* at 701. "Only 'threats of a most immediate and menacing nature' can possibly qualify as past persecution." *Id.* (citing *Boykov v. INS*, 109 F.3d 413, 416 (7th Cir. 1997)).

Here, Cristobal was not physically harmed by the guerrilla groups at any point during his service in the Civil Patrol. The evidence suggests he was subjected to only one threatening incident in which guerrilla members angrily told Cristobal they would forcibly conscript him and his family members at some later date and might have harmed them if barking dogs had not scared them away. The threat that Cristobal faced was certainly not "of a most immediate and menacing nature" such that it could qualify by itself as past persecution. Therefore, the BIA's conclusion that Cristobal failed to establish past persecution is clearly supported by substantial evidence.

### B. Well-Founded Fear of Future Prosecution

An applicant has a well-founded fear of persecution if "(1) he or she has a fear of persecution in his or her country on account of race, religion, nationality, membership in a particular social group, or political opinion; (2) there is a reasonable possibility of suffering such persecution if he or she were to return to that country; and (3) he or she is unable or unwilling to return to that country because of such fear." *Mikhailevitch*, 146 F.3d at 389 (citing 8 C.F.R. 1208.13(b)(2)(i)). "To establish that his fear of persecution is well-founded, a petitioner must present specific facts which

demonstrate actual persecution or establish 'good reason to fear persecution on one of the specified grounds.'" *Dolores v. INS*, 772 F.2d 223, 226 (6th Cir. 1985) (quoting *Carvajal-Munoz v. INS*, 743 F.2d 562 (7th Cir. 1984)).  The applicant "need not prove that it is 'more likely than not' that he or she will be persecuted in his or her own country."  *INS v. Cardoza-Fonseca*, 480 U.S. 421, 449 (1987).  An applicant does not have a well-founded fear if he or she "could avoid persecution by relocating to another part of the applicant's country . . . if under all circumstances it would be reasonable to expect the applicant to do so."  8 C.F.R. 1208.13(b)(2)(ii).

In support of his contention that he may be harmed on account of his previous membership in the Civil Patrol, Cristobal offered a variety of news accounts and human rights reports of violence in Guatemala.  However, the articles were largely irrelevant to the subject of how former Civil Patrol members are treated by guerrillas.  Among the news articles provided by Cristobal, most of which are more than ten years old, the most relevant information is in a 2007 U.S. Department of State Country Report on Guatemala, which described "social cleansing" groups alleged to include former soldiers and guerrillas that had committed at least thirty murders in the town of Santiago Atitlan. But the report does not provide any evidence that the violence targeted former Civil Patrol members such as Cristobal or that otherwise would put Cristobal in more danger than anyone else in the country. Additionally, the news accounts provide no evidence that such murders are occurring in his former town of Huehuetenango.

Cristobal also stated that former guerrilla members would recognize and create problems for former Civil Patrol members.  But the IJ found Cristobal's fear of harm too remote to constitute a well-founded fear of persecution, particularly in light of his long absence from Guatemala and his

limited role in the patrol, which "was not so significant, that he would now be recognized as a person

who had opposed the guerillas, particularly in areas other than his hometown."

Cristobal argues that even if the evidence provided of the possibility of future persecution

was weak, it was sufficient to meet the well-founded fear standard, which does not require an

applicant to show a high likelihood of persecution.[1]  However, although Cristobal believes he will

be recognized in his hometown as a supporter of the army, he does not provide specific facts that

establish a good reason to fear he will be persecuted, particularly because of the passage of time, his

limited role in the Civil Patrol, and the absence of past persecution.  Nor does Cristobal establish that

there is a reasonable possibility that he would be persecuted in towns other than his own.  Once

Cristobal moved to Guatemala City, he faced neither persecution nor any other threatening incidents

on account of his membership in the Civil Patrol.[2]  Accordingly, substantial evidence supports the

---

[1]Cristobal relies heavily on dicta in *INS v. Cardoza-Fonseca*, 480 U.S. 421 (1987), to argue that a ten percent chance of persecution establishes a well-founded fear of persecution.  However, that case held that asylum applicants need not show a clear probability of persecution to meet their burden. *Cardoza-Fonseca*, 480 U.S. at 430.  And although the Supreme Court rejected the view that "because an applicant only has a 10% chance of being shot, tortured, or otherwise persecuted, that he or she has no 'well-founded fear' of the event happening," *Cardoza-Fonseca*, 480 U.S. at 440, the Court took the ten percent figure from a hypothetical country in which one in every ten adult males is put to death or sent to a remote labor camp. *See Id.* at 431.  The hypothetical assumed that a group is actually being persecuted, even though the chance that any given individual will be persecuted is ten percent. *Cardoza-Fonseca* did not alter the rule that applicants must establish that persecution is a reasonable possibility.  *Id.* at 440 (citing *INS v. Stevic*, 467 U.S. 407, 424–25 (1984)).

[2]Cristobal also argues he does not need to show he would be singled out individually for persecution if there is a pattern or practice of persecution of similarly situated individuals.  Cristobal requests this Court to reverse the BIA's decision on the basis that it did not properly address whether there was a pattern or practice of such persecution. However, the BIA did find that Cristobal offered scant evidence of *any* mistreatment of members of the Civil Patrol.  This finding indicates, *a fortiori*,

conclusion of the BIA that Cristobal has failed to establish a well-founded fear of future prosecution on account of his past service in the Civil Patrol.

### C.

Because substantial evidence supports the conclusions that Cristobal did not establish past persecution or a well-founded fear of future persecution, Cristobal fails to satisfy the burden of proof for his asylum claim.

### III.

In light of the foregoing discussion, we **DENY** Cristobal's petition for review of the BIA decision dismissing his application for asylum and related relief.

---

that the BIA found Cristobal did not establish any pattern or practice of persecution of members of the Civil Patrol.